GOODRICH *v.* MITCHELL.

Opinion delivered July 2, 1928.

*Strait & Strait,* for appellant.

*Sellers & Eddy* and *E. A. Williams,* for appellee.

HUMPHREYS, J. This suit was brought in the chancery court of Conway County by appellant against appellee to quiet and confirm the title and possession in her against appellee to that part of the west half of the southwest quarter of section 14, township 6 north, range 18 west, in said county, lying north and east of Mountain Bluffs, consisting of about six acres of bottom land in a V shape, adjoining and immediately within the north boundary line of said tract.

Appellee filed an answer, denying appellant's title and right of possession to said six-acre tract of land, and alleging title and the right of possession thereto in himself through open, continuous, notorious and adverse possession of himself and his grantor for more than seven years, claiming to be the owner thereof.

The cause was submitted to the court upon the pleadings and depositions of witnesses, resulting in a finding that appellee acquired title to said six-acre tract of land by adverse possession thereof for more than seven years, and a consequent decree dismissing appellant's complaint for the want of equity, from which is this appeal.

The undisputed testimony showed that the six-acre tract in question is that portion of the west half of the southwest quarter of said section, township and range situated north and east of Mountain Bluffs and lying in a V shape on the north part of said tract, and which 80-acre tract of land, including the six-acre tract in dispute, was inherited by appellant and her brothers and sisters on November 15, 1889, and that appellant purchased the interest of her brothers and sisters therein on November 28, 1919. It also appears from the undisputed evidence that the lands immediately north of the Ellen C. Goodrich 80-acre tract were owned and had been owned for a number of years by H. James, who sold it to appellant in the year 1916. At the time of the purchase of the James tract by appellee, the south portion thereof was inclosed by fences on the east, west and north sides, and by the bluff, with wire fences across the ravines and gulches intersecting same on the south side. In other words, the bluff with the wire across the ravines and gulches served as the south side of the inclosure to keep the stock out. When appellee acquired the James tract, the bluff which served as a fence on the south side was pointed out to him as the south line of the James land. A part of the inclosed land was in cultivation at the time of the purchase, and a part of it was cleared in 1924, plowed in 1925, and put in cultivation in 1926. Appellee remained in the open, notorious, continuous and adverse possession of all the land north of Mountain Bluffs, which was pointed out to him as the south line of the lands he purchased from H. James, claiming title to the bluff under his purchase from James.

844

On June 6, 1922, appellee wrote the following letter to appellant:

"Miss Ellen C. Goodrich,

"Elm Terrace,

"Rocky Hill, Conn.

"Dear Madam: I am a neighbor of yours, owning the most of 14-6-18, of which the Goodrich heirs own the west half of the southwest quarter. Besides this, I own what is known as the Pawpaw Bend, lying in section 13, and 24-6-18, and 18 and 19-6-17. The Goodrich heirs also own the south half of 15-6-18, which lies on the side of the mountain, then I join you again on the west, having recently bought fractional 16 and 17-6-18. I am inclosing herewith a map showing the Goodrich land by cross, lying between my lands in section 14 and 16. I am also inclosing a picture of a part of my farm in section 13 and some of my stock.

"Wife and I start next week for our Winchester Club's convention, which meets at New Haven, Conn., from June 26 to 29. We will stop at the Taft Hotel. I do not know how far you live from New Haven, but I would like to meet you or some one representing you while I am up in Connecticut this time. Mr. Drew, vice president of the Winchester Repeating Arms Company, can tell you who I am. If you should ever care to offer your interest in your land in sections 14 and 15 at a price I can afford to pay, I would like to consider buying it.

"I trust you will pardon this abrupt letter, but I thought if we knew each other I might be of some service to you some time, whether we make any land deal or not.

"Yours very truly,

(Signed) "E. E. Mitchell."

In 1924 and again just before the institution of this suit, E. A. Woolverton surveyed the Goodrich 80-acre tract, locating the northeast and the northwest corners thereof. The north line of the north 40 ran through the field or cultivated lands of appellee, taking about six acres of the inclosed land or field. The record does not

reflect the exact time James purchased the land he sold to appellee north of the Goodrich 80-acre tract, but it does reflect that he used the bluff with the wire across the ravine and gulches as his south inclosure, and rented the inclosed land several years before selling same to appellee.

The only questions arising on the appeal, upon trial *de novo*, are the sufficiency of the bluff as an inclosure on the south side, and, if so, whether the letter written by appellee to appellant broke the continuity of his possession so as to destroy his claim of ownership under the seven-year statute of limitation.

Appellant contends that the trial court's finding upon both questions is contrary to the weight and preponderance of the evidence.

The bluff with the wire across the ravines and gulches was used as a south fence or inclosure of the field, and served to keep stock out of the crops raised therein. We think it was a sufficient inclosure upon which to base a claim of the lands by adverse possession.

Appellant interprets the testimony of appellee to mean that he only intended to claim such land as was embraced in his deed from James, or to the true lines according to the government calls in said deed, whenever they might be located by correct survey. We do not so interpret his testimony. He testified that, when he bought from James, his south line was pointed out as the bluff line, and that he thereafter occupied and intended and actually claimed title to all land up to the bluff.

Appellant argues, however, that appellee's letter to her offering to buy her 80-acre tract indicated very clearly that he was claiming no lands adversely beyond the true boundary lines of his own land. The letter was written in 1922, and would have indicated that he was claiming no part of appellant's land, had he known that a part of the 80-acre tract was inclosed in his field. There is nothing in the letter to indicate that he was cognizant of that fact when he wrote the letter. He referred in

the letter to government calls or description to the adjoining lands owned by each of them, and said nothing whatever concerning the location of the division line between them. There is nothing in the letter inconsistent with his open, adverse, continuous possession and claim of title to all the land north of the bluff.

The decree is affirmed.