STRICKER *v.* BRITT.

4-6514                                              157 S. W. 2d 18

Opinion delivered December 1, 1941.

*W. B. Alexander* and *Coleman & Riddick,* for appellant.

*A. A. Poff* and *J. H. Carmichael,* for appellee.

GREENHAW, J. Ellis T. Hart and the appellant, R. M. Stricker, being the owners of what is known as the south half of Gum Grove Plantation in Laconia Circle in Desha county, consisting of 502.20 acres, sold and conveyed said land to J. L. Britt, one of the appellees herein, and his brother, Mike Britt, Jr., on January 7, 1920, for the sum of $22,500, of which amount the sum of $12,500 was paid in cash, the balance of $10,000 being payable at the rate of $2,500 per year, represented by four notes, due respectively in January, 1921, 1922, 1923,

and 1924, a vendor's lien being retained in the deed to secure the balance of the purchase price of the lands. The two notes which were due in 1921 and 1922 were paid. Nothing was paid on the remaining notes which were due in January, 1923 and 1924, except a small amount of interest. Thereafter Mike Britt, a bachelor, died, and his mother, Mrs. Kate Britt, was appointed administratrix of his estate. The appellant, R. M. Stricker, brought suit in the chancery court of Desha county in December, 1927, against the appellees, J. L. Britt, Jeffie St. Clair Britt, his wife, and Mrs. Kate Britt, individually and as administratrix of the estate of Mike Britt, deceased, to foreclose the vendor's lien, he theretofore having acquired the interest of Hart in the notes' and vendor's lien. In April, 1928, after proper service had been had upon all defendants, the court rendered judgment for the balance due upon said notes, together with interest and costs, and the property was ordered sold for the payment thereof. In May, 1928, the property was sold at foreclosure sale and purchased by the appellant, R. M. Stricker, the total amount of his bid, including the debt, interest and costs, being approximately $8,000. In June, 1928, a commissioner's deed was issued to Mr. Stricker. The order of the court confirming the sale authorized the issue of a writ of assistance.

The present litigation, from which this appeal resulted, was instituted September 15, 1938, when the appellant filed suit against the same defendants. His suit was styled a supplemental bill, setting up the former litigation by which he purchased at the commissioner's sale and became the owner of the real estate involved, and further alleging that these defendants were in possession of said property at the time of the foreclosure and have remained in possession thereof and continued therein until the summer of 1938 to hold possession at the sufferance of the plaintiff, and that neither of the defendants had acquired any independent right or title to said lands subsequent to the execution of the commissioner's deed in the former proceedings, more than ten years before; that he had demanded possession from the defendant, J. L. Britt, one of the appellees herein,

and possession was refused, for the reason that J. L. Britt and the other defendants were claiming title to said land. He further alleged that any right or claim of the defendants was in subordination to the title acquired by him through the foreclosure decree and sale thereunder. He prayed for a writ of assistance to be issued against the defendants and anyone claiming under them, also for rents for three years next before the filing of the supplemental bill.

The defendants filed a general answer denying the material allegations of the complaint, and the defendant, J. L. Britt, filed a special answer alleging that he and the other defendants, early in the spring of 1927, abandoned and gave up the lands referred to, and that none of the defendants were in possession of said lands when the original suit was filed in December, 1927; that none of the defendants were in possession or exercising any control over said lands or any part thereof during the month of June, 1928, when the foreclosure sale was confirmed, or at any time thereafter during the years 1928 and 1929, and that none of the defendants except J. L. Britt have been in possession of or exercised any control over said lands or any part thereof since the spring of 1927. He further alleged that in January, 1930, he went on and took possession of certain portions of said lands, which he later had surveyed in 1938 and which consisted of around 200 acres. Appellee alleged that he had acquired an independent title to said land of approximately 200 acres by adverse possession. He denied that the plaintiff was entitled to a writ of assistance, alleged that the commissioner's deed to Stricker was a cloud upon his title, that same should be declared void and should be removed, and prayed that title to the land, consisting of around 200 acres, which he had actually taken into his possession and cultivated during this time under claim of ownership, be vested absolutely in him as against the plaintiff, R. M. Stricker.

A reply was filed by Stricker to the special answer of Britt denying that Britt had acquired a new and independent right and title subsequent to the original litigation, and that his possession was adverse to the claim of the plaintiff.

The evidence showed that about ten years before the sale of the south half of Gum Grove Plantation to J. L. Britt and his brother, the appellant sold and conveyed to them what is known as the north half of Gum Grove Plantation in Laconia Circle consisting of about the same acreage as was later sold and included in the south half of Gum Grove Plantation. The sale price of the north half was approximately $2,000. The approximately 200 acres of land which appellee, J. L. Britt, is now claiming by adverse possession is on the north side of the south half, and adjoins the land which he and his brother purchased from Stricker about ten years before known as the north half.

In addition to the testimony of the appellant, R. M. Stricker, and the appellee, J. L. Britt, six witnesses, all but one of them landowners in Laconia Circle, testified on behalf of the appellee. After hearing the evidence, the court found the issues in favor of the appellee, and the appellant has prosecuted an appeal to this court.

The evidence showed that in March, 1927, there was a big overflow which caused breaks in the levees, and all the land in Laconia Circle was flooded. Laconia Circle is surrounded by levees to protect it from the high water of the Mississippi and White rivers. During that year very little in the way of crops was raised. No crops were grown on the south half of Gum Grove Plantation. Nineteen twenty-eight was a fairly good crop year, and while crops were generally grown in Laconia Circle, where the land in question was located, no crops were planted or grown upon the south half of Gum Grove Plantation, although the north half of Gum Grove Plantation which was owned by the appellee had crops on it that year; that it was lower than the south half, and crops could have been grown on the south half. There was another overflow in 1929, but crops were grown that year on other lands in Laconia Circle, including the north half of Gum Grove Plantation, owned by the appellee, but no efforts were made to grow crops on the south half of Gum Grove Plantation.

The appellee testified that he and the other defendants abandoned all of the lands in the south half

of Gum Grove Plantation after the flood of March, 1927, and never attempted to use or exercise any control whatever over said lands prior to the filing of the foreclosure suit in December, 1927, and that after said suit was filed neither he nor the other defendants made any defense to the suit and were not interested in defending it, for the reason that he considered all of said lands were of less value than the balance due on the purchase price thereof. He never at any time in 1928 prior to the foreclosure sale nor thereafter claimed any interest in said lands, never exercised any control over same, nor used said lands, and never had same in his possession. In 1929 he never went upon said lands, never used same in any manner, nor attempted to exercise any control, as he had already abandoned all interest in the lands. During these years the plaintiff, R. M. Stricker, manifested no interest in the lands, so far as he was able to discern; Stricker never rented the land and no one apparently attempted to cultivate or otherwise use the lands. The part which he had formerly been cultivating including the sloughs therein consisted of around 200 acres, and was permitted to grow up in willows, sprouts and buck vines, and in January or February, 1930, he decided that as no one was doing anything with said lands and he considered they had been abandoned, he entered thereon with the intent at the time to clean up said land, cultivate it, and claim it as his own. He hired a crew of 12 to 15 men who spent a great deal of time working and cleaning up the willows, sprouts and brush, and finally restored the land, consisting of around 200 acres, to a high state of cultivation at an expense of around $10 per acre, his total expense in doing this work, over a period of time, costing him around $2,000. During this time neither the appellant nor anyone else disputed his claim of ownership. He continued to improve said land and cultivated it each year continuously thereafter. The first time anyone disputed his right or claim to the land was in June, 1938, when the appellant, who had not been on the land for 12 years, appeared and claimed it.

Appellee further testified that in 1928 the north half of Gum Grove Plantation which he personally owned

was planted in cotton and corn, but nothing was planted and no efforts made by anyone to grow a crop on the south half. He had crops on the north half belonging to him in 1929, but the south half continued to lie idle and no one attempted to cultivate it or use it in any manner that year.

Six witnesses testified for the appellee, all of them practically to the same effect: that the south half of Gum Grove Plantation was not cultivated or used by anyone from the time of the flood in the spring of 1927 up until the appellee took possession of it in January or February, 1930, and began clearing the sprouts and brush which had grown up on the cultivated land. During this time witnesses never saw the appellee doing any work on said land or having anything to do with it. They simply saw that it was not being cultivated or worked, and was permitted to lie out and grow up in sprouts, buck vines, etc. They knew that J. L. Britt formerly owned it and did not know that it had been foreclosed, and some of them "wondered" why it was not being cultivated; that 1928 was a fairly good crop year in Laconia Circle, and most of the farms were in crops that year. Also in 1929, crops were grown in Laconia Circle, but during all of this time the south half of Gum Grove Plantation continued to remain idle and uncultivated. They further testified that appellee had a crew of men clean up the cultivated land in the south half of Gum Grove Plantation, beginning in January or February, 1930, and that the appellee continued thereafter without interruption to use and control said land as his own, keeping it cleaned up, placing it in a high state of cultivation, and growing crops on it continuously until this, the present litigation, ensued in September, 1938; that during all of this time they did not see the appellant, Mr. Stricker, and never heard of him or anyone else questioning in any manner the possession and alleged ownership of the appellee. None of these witnesses were related to the appellee.

It was stipulated that Hart conveyed his interest in the notes to the appellant, that the taxes were paid from 1927 through 1933 by the appellant, and that the appellant paid the taxes for 1937; that Britt paid the general

taxes for 1934, 1935 and 1936 on all the south half except one 80-acre tract, and that Stricker paid the general taxes for 1937; that the appellant and appellee paid the drainage and levee district taxes for 1934 and 1935, one paying on part of the land and the other on the balance, and that the appellee paid the drainage and levee district taxes for 1936; that neither the general taxes nor the drainage and levee district taxes for 1938 had been paid, this litigation having ensued.

The appellant testified that he foreclosed the vendor's lien and purchased the land at the commissioner's sale in May, 1928, bidding the judgment, interest and costs amounting to around $8,000, and that the commissioner's deed was executed and delivered to him in June, 1928. He had not seen the land in question from 1926 until the summer of 1938. He lived in the state of Mississippi, where he had lived all of his life. After he purchased at the commissioner's sale in 1928 he did not go to inspect the land; he did not know whether the appellee was in possession of the land or not at the time of the foreclosure sale, and did not know whether anyone was in possession of or using it. During all of the intervening years he knew nothing about the land; not only did not see it, but did not communicate with anyone concerning it, made no effort to rent it or collect rents thereon, and in fact gave it no personal attention, nor did he have anyone looking after it as his agent. He returned to Desha county on December 2, 1936, to redeem his lands from tax sale, and then for the first time learned that appellee had paid the taxes on certain parts of the land for the years 1934 and 1935. He further admitted that after securing this information he did not go see the land, even though he could have done so by train or highway. Although he had this information on December 2, 1936, before the appellee's alleged possession had ripened into adverse possession for seven years, he made no effort to contact the appellee either in person or otherwise, but returned to Mississippi. He made no attempt thereafter to do anything about this land or to investigate and learn why the appellee had paid taxes on a part of his land, and further admitted that he did not return

to Arkansas until June, 1938, and then found that the appellee was working and claiming this land. He had not seen the land for 12 years prior to that time, and during all of this time he had done nothing about the land except to pay taxes part of the time. He testified that he wrote the appellee a letter, he thought about three years after the foreclosure, wanting to sell him the land, and that he heard from him, but he was unable to produce a copy of his letter or of the reply, stating that he had misplaced them.

Interrogated as to whether the appellee had attempted to mislead or deceive him with reference to the land, he answered that the appellee "made no effort one way or the other, for or against," that he did not know when the appellee quit exercising control over the land nor when he recommenced exercising control over it, but that he could have discovered this by visiting the land between the years 1927 and 1938. He also could have ascertained it by writing a letter, sending a telegram, or using the telephone, but did not do so.

Q. "You never made any effort to get possession of that land until after the government had built a good levee up there? A. That is true, I did not." He further testified that he made an effort to oust the appellee in 1938. Q. "And that was after the government had built the more substantial levee, and after Mr. Britt had worked on the land so that it was in a good state of cultivation? A. Let's see now, this suit was started in— yes, that is true."

The appellee in rebuttal testified that he never received a letter from the appellant after the foreclosure suit, nor did he ever write him thereafter, and stated that the amount of land which he was claiming title to by adverse possession was approximately 200 acres, and that that left around 300 acres which still belonged to Mr. Stricker, and about which there was no dispute, in the south half of Gum Grove plantation. The government enlarged and raised the height of Laconia Circle levee in 1934, and later constructed what is known as the "back levee," and that the enlargement of Laconia Circle levee

and the construction of the back levee were of great benefit to the lands in Laconia Circle, greatly increasing their value, and that the back levee, or second levee, keeps the seep water from a large portion of the lands in Laconia Circle. Appellee testified that if he had not cleared the land and attempted to keep it in a state of cultivation it would have gotten worse from year to year.

We deem further reference to the evidence in this case unnecessary. Suffice it to say that the lower court, after hearing all of the evidence, found the issues in favor of the appellee and dismissed the supplemental bill of the appellant for want of equity. The court found that the defendants abandoned the south half of Gum Grove Plantation in 1927 before the foreclosure suit was filed, and from that time on until January, 1930, none of the defendants were in possession of all or any part of said lands and did not undertake to claim any right, title, or interest thereto or exercise any control over same; that in January, 1930, the appellee, J. L. Britt, entered upon and took actual possession of about 209.04 acres of said lands, being the same shown by plat attached to appellee's deposition, marked exhibit "A," and being particularly described in the special answer of the appellee; that the entry of J. L. Britt upon the lands in January, 1930, was hostile and in derogation of, and not in conformity with the rights of the true owner, and was not permissive or consistent with the title of the plaintiff; that the entry of J. L. Britt was an actual invasion of the legal title, and possession of R. M. Stricker was invaded and disturbed; that J. L. Britt cleared, cultivated, and planted said lands in crops of cotton, corn and hay continuously each year from 1930 to 1938, both inclusive, during which time, a period of more than eight years, he was in continuous, open, actual, adverse, and notorious possession, claiming to be the owner thereof, and that the acts of J. L. Britt in relation to the said lands were visible and notorious and were sufficient to put the owner, R. M. Stricker, upon notice as to the possession and claim of ownership of J. L. Britt and to establish and maintain his claim of title by adverse possession.

The court canceled the commissioner's deed, so far as it affected the lands which the appellee claimed adversely, dismissed the complaint of the plaintiff for want of equity, and quieted and confirmed in the appellee, J. L. Britt, as against the appellant, title to the lands specifically described, consisting of something over 200, acres.

We have carefully considered all of the evidence and contentions in this case, and are unable to say that the findings and decree of the lower court are clearly against a preponderance of the evidence.

The appellant contends that the appellee never actually abandoned possession of the property he claimed adversely after the foreclosure sale, and that his possession was permissive, within the meaning of the law. He cites a number of cases to the effect that where the mortgagor remains in possession of the mortgaged premises after a foreclosure sale, his subsequent possession thereof is presumed permissive, and adverse possession will not begin to run until the owner has notice that he is claiming ownership in the land. We agree that such is the law, and the cases cited would be applicable if such were the facts here. However, no one testified that the appellee did not abandon the land in question and cease to have anything whatsoever to do with it after the foreclosure decree in 1928. The appellant said he knew nothing about the possession of the land, and did not know whether any one was in possession thereof during this time. The appellee testified positively that all the defendants abandoned it, and after the land had remained unoccupied and uncultivated and had been permitted to grow up in willows, sprouts, buck vines, etc., from 1927 until January, 1930, with no one apparently exercising or attempting to exercise any control over it, he decided that he would enter upon the formerly cultivated portions of this land, clear and clean it up, claim it as his own and improve and cultivate it; that pursuant to such intention, this is what he did in January or February, 1930, and continued to occupy, use, cultivate, claim and control said cultivated land from January or February, 1930, up until the summer of 1938 without protest from the appellant or anyone else, and

that no one had questioned his right to said land until the appellant returned to Arkansas in the summer of 1938 and claimed it.

The lower court found that such were the facts, and, in our opinion, the appellee's possession under the facts in this case was not permissive, and he was not on the land by permission or sufferance of the owner. Hence, the cases referred to by the appellant are not controlling here.

Even though the appellant may have known nothing about the appellee's acts in possessing, cultivating, and claiming this land from the early part of the year 1930 until in June, 1938, it is undisputed that when he came to Arkansas on December 2, 1936, he found that the appellee had been paying taxes on part of this land. This certainly would have put any reasonable, cautious and prudent person upon notice to make a further investigation then in order to protect his interests. Seven years had not elapsed at that time. Yet, according to his own testimony, he remained quiescent until in June, 1938, about eight and one-half years after appellee, according to the undisputed evidence, had entered upon the land, claiming, using and improving it as his own.

Since we hold that the lower court correctly found that appellee's possession was not permissive, no special notice to appellant of the adverse claim of appellee was necessary, and the general rule as to notice of adverse possession, which is well established in this state, is applicable. In the case of *Waller* v. *Dansby*, 145 Ark. 306, 224 S. W. 615, we quote the fourth syllabus: "Whatever puts a party on inquiry amounts to notice where the inquiry becomes a duty and would lead to knowledge of the requisite facts by the exercise of ordinary diligence and understanding." We quote the second syllabus in the case of *Hughes Brothers* v. *Redus*, 90 Ark. 149, 118 S. W. 414, as follows: "One's actual possession of land is notice to the world of title under which he claims."

In the case of *Culver* v. *Gillian*, 160 Ark. 397, 254 S. W. 681, it was said: "While, in such cases, to constitute

an adverse possession, there need not be a fence or buildings, yet there must be such visible and notorious acts of ownership exercised over the premises continuously, for the time limited by the statute, that the owner of the paper title would have knowledge of the fact, or his knowledge may be presumed as a fact. In other words, it has been well said that if the claimant 'raises his flag and keeps it up' continuously for the statutory period of time, knowledge of his hostile claim of title may be inferred as a matter of fact.''

The law with reference to adverse possession is well settled in this state, and the only question here is whether or not the evidence shows adverse possession. In the case of *Smart* v. *Murphy,* 200 Ark. 406, 139 S. W. 2d 33, this court, quoting from one of its former opinions, *Terral* v. *Brooks,* 194 Ark. 311, 108 S. W. 2d 489, said: ''In order that adverse possession may ripen into ownership, possession for seven years must be actual, open, notorious, continuous, hostile, exclusive, and it must be accompanied with an intent to hold against the true owner.'' In the same opinion this court quoted from American Jurisprudence as follows: ''Adverse possession is one of the modes of acquiring title to property. . . . It is said to be a possession which is commenced in wrong and continued in right. Again, it has been defined as the ripening of adverse possession into title by lapse of time. A title acquired by adverse possession is a title in fee simple, and is as perfect a title as one by deed from the original owner or by patent or grant from the government.''

In this case the appellee claimed only the land which was in cultivation prior to his alleged entry in January or February, 1930, and which he cleared, cultivated and used. He did not claim the timber land and other land in the south half of Gum Grove Plantation, consisting of around 300 acres. The undisputed evidence shows that the appellee entered upon the land, claimed by him, in the early part of 1930 with the intention of claiming it as his own and improving and cultivating it. He continued to have possession thereof, cultivating and improving it, and claiming it as his own for more than eight years

before any question was raised as to his right of possession and claim of ownership. His actions in this respect were open, continuous, visible, adverse and hostile to the rights of the former owner. In our opinion every element essential to establish a title by adverse possession exists here.

Being unable to say that the findings and decree of the lower court are against a clear preponderance of the evidence, and finding, on the contrary, that they are supported by an overwhelming preponderance of the evidence, we have concluded that the decree should be affirmed, and it is so ordered.