MILLS *v.* DENISTON.

5-1187                                   299 S. W. 2d 195

Opinion delivered March 4, 1957.

464

*Wiley A. Branton,* for appellant.

*Jay W. Dickey,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellees, Robert Deniston and wife, brought suit against appellant, Annie B. Mills, in which they alleged they owned, by virtue of a deed from M. L. Poss and wife dated May 29, 1952, the West 1/2 of Lot 1 in Block 11 of Dorris' Addition of Brump's Bayou to the City of Pine Bluff, Arkansas. They further alleged that appellant had caused to be placed on a 30 foot wide strip in the rear of this property (W 1/2 of Lot 1, Block 11) a building which she refused to move, and prayed for an order directing defendant to move said building from the property.

Appellant answered with a general denial and alleged ownership by adverse possession of that part of the above property in dispute and upon which the building was located, and further alleged that appellees "held title by virtue of a deed from the purchaser at a tax sale and could claim no greater interest than the owner of the assessed property at the time it went delinquent for taxes." Trial resulted in a decree granting appellees the relief prayed and this appeal followed.

For reversal appellant says first, that the court erred in holding that appellant had not acquired title by adverse possession. We do not agree. As indicated, this litigation involves primarily title to the 30 foot strip of land to the rear of the appellees' lot. The record shows that the above property has been assessed and the taxes paid thereon from about 1928 to 1954 as the W 1/2, Lot 1, Block 11, of Dorris' Addition of Brump's Bayou to the City of Pine Bluff, Arkansas, together with the E 1/2 of Lot 2, Block 11 of said addition, two con-

tiguous lots. Following a mortgage foreclosure sale, E. D. Peebles, Jr., was issued a commissioner's deed, May 10, 1941 to the E 1/2 of Lot 2, Block 11 and no mention was made of this 30 foot strip in the rear of the W 1/2 of Lot 1, Block 11. Thereafter the E 1/2, Lot 2, Block 11 was conveyed to appellant (Mrs. Mills) and again no mention was made of the 30 foot strip in question. The W 1/2 of Lot 1, Block 11, was also conveyed to E. D. Peebles, Jr., on November 23, 1946, and thereafter Peebles conveyed to Annie B. Mills, E 1/2 of Lot 2, Block 11, and this deed was recorded in 1952. In the early part of 1953 Mrs. Mills, appellant, constructed a small frame building on the line between the W 1/2 of Lot 1, Block 11, and the E 1/2 of Lot 2, Block 11, about half of the building being on the E 1/2, Lot 2 and the other half on the W 1/2 of Lot 1, on the 30 foot strip here in question. It further appears that Peebles had sold to Mrs. Mills, appellant, under contract, the E 1/2 of Lot 2, Block 11. Peebles transferred his interest in this contract and deeded the property to Pinchback Taylor, Jr., in 1948, and the latter made a deed to Mrs. Mills, appellant, in 1952 and took a mortgage back as a security for a loan. In all these transactions the property was always described as the E 1/2 of Lot 2, and no mention was made of the 30 foot strip of land in the rear of Lot 1.

Appellees, Deniston and wife, acquired title to the W 1/2 of Lot 1, Block 11, by virtue of a deed from Mr. and Mrs. Poss, May 29, 1952. It appears that this property became delinquent for the 1948 taxes while assessed under the description W 1/2 of Lot 1, Block 11 of Dorris' Addition of Brump's Bayou to the City of Pine Bluff, Arkansas, and a tax deed was issued the Posses under that description December 13, 1951. The tax deed from the State conveyed to the purchaser (M. L. Poss and wife) at such sale whatever right, title and interest the State had in the property, and the Posses in their deed to appellees transferred all the interest they had.

In *Osceola Land Co.* v. *Chicago Mill & Lumber Co.*, 84 Ark. 1, 103 S. W. 609, we held: ''Under Kirby's Di-

gest, §.7104 (now § 84-1302 Ark. Stats. 1947), providing that a tax deed 'shall vest in the purchaser all the right, title, interest and estate of the former owner in and to the land conveyed and also the right, title and claim of the State and county thereto, and shall be *prima facie* evidence that all the prerequisites of the law were complied with, . . . and that all things whatsoever required by law to make it a good and valid sale and to vest the title in the purchaser were done,' a valid tax sale transfers, not only the title of the person in whose name the land was assessed for taxes, but the interests of all others therein."

As we said in *U. S. Bond & Mortgage Co.* v. *Reddick,* 199 Ark. 82, 133 S. W. 2d 23, "To be adverse, possession of land must be actual, open, continuous, hostile, exclusive, and be accompanied with an intent to hold adversely to the true owner" for seven years. Appellant attempted to establish adverse possession by an effort to show that she and her predecessors in title had held the property adversely for a period of more than seven years. To do this it was necessary for appellant to prove that her predecessors held this property adversely and that appellees had notice thereof, before she could "tack on" their possession to hers. We so held in *Fulcher* v. *Dierks Lumber & Coal Co.,* 164 Ark. 261, 261 S. W. 645, "One claiming land by adverse possession has the burden of proving that his predecessors in title held adversely, and that the legal owner had notice thereof, before he could tack his possession on to theirs." In order for Mrs. Mills to establish her claim of seven years adverse possession of the property in question, it would be necessary to take the period of time the property was held by Peebles, May 9, 1941-November 15, 1945, and tack on the first 2 1/2 years of the period after she went into possession. We hold that the preponderance of the evidence in this case is not against the chancellor's findings, that she failed to do this. It appears undisputed that throughout, including tax assessments, the foreclosure, conveyance by E. D. Peebles, Jr., and the mortgage to Taylor and Company, at no time was any reference ever made to the 30 foot

strip here involved and, in fact, the property was always described as the E 1/2 of Lot 2 and W 1/2 of Lot 1, Block 11. They were two separate adjoining pieces of property separated by a fence which extended on the dividing line to the 30 foot strip for a distance of 125 feet, and the evidence showed that there were signs of an old fence along the remaining 30 feet, the chancellor so found on viewing the property. By stipulation there was put in evidence a plat which shows the W 1/2, Lot 1, Block 11 to be 155 feet deep and 60 feet wide, and the E 1/2, Lot 2, Block 11, which on the east side joins the W 1/2 of Lot 1, is likewise 155 feet deep and 60 feet wide.

It is significant that E. D. Peebles, Jr., was not offered as a witness in this case to show what his intent was in conveying the property (E 1/2, Lot 2) to appellant, or whether he was claiming any of the property by adverse possession. When Peebles conveyed the E 1/2 of Lot 2 to appellant, there is a presumption that he only intended to convey the property described and no other. Had he intended to include also the 30 foot strip off the side of the W 1/2, Lot 1, Block 11, it would have been a simple matter to have embraced this in the description. This he did not do. ''The general rule that parol evidence is inadmissible to vary or contradict the terms of a written contract applies in all its strictness to actions involving deeds. In the construction of a deed, all prior negotiations must be taken as merged in that instrument, the conclusive presumption being that the whole engagement of the parties and the extent and manner of it were reduced to writing . . .'' 16 Am. Jur. § 445, p. 686. The evidence also shows that appellant never assessed or paid any taxes on this 30 foot strip.

Finally, appellant says that ''the subsequent actions of the owners of the two adjacent lots amounted to an acquiescence of the boundary line that was binding on all parties.'' We do not agree. As indicated, the evidence does not show that there was any agreement as to the boundary lines separating the South 30 foot wide

strip of the W 1/2, Lot 1, Block 11 of Dorris' Addition of Brump's Bayou to the City of Pine Bluff, from this lot.

Accordingly, the decree is affirmed.

Chief Justice HARRIS disqualified and not participating.