WALLACE *v.* AYRES, EXCX.

5-1524 311 S. W. 2d 758

Opinion delivered April 7, 1958.

*Ed B. Cook,* for appellant.

*Bruce Ivy,* for appellee.

J. SEABORN HOLT, Associate Justice. This litigation involves the title to a small piece of land in what is commonly called ''Old Town'' in Osceola, Arkansas. Appellant, Mrs. Wallace, claimed title to a part of the property through deeds from Ollie Mae Feezor, dated February 24, 1945, and guardian's deed from Emma Feezor, guardian of the person and estate of Mary Elizabeth Feezor, dated February 19, 1945. This part designated as Lot 11 Humphreys Addition was described by metes and bounds as follows: ''Beginning at the township line dividing Township 12 and 13 on the east line of Main Street to south and in line with the west line of the lots owned by and resided on now by G. W. Boyce and the lot owned by the heir of Mary J. Walker. thence south 58 and a half feet to a stake, thence east 71 feet and 9 inches to a stake, thence south 31 feet and 6 inches to a stake, thence east to the Mississippi River, thence up and along the bank of the Mississippi River to the township line dividing Township 12 and 13, thence west of the point of beginning; it being a part of the southwest frl. quarter of Section 6, in Township 12 North and Range 10 East,'' is not in dispute and was

conceded to be owned by appellant. Appellant, however, claimed that she had acquired title by adverse possession to the small tract lying immediately south of Lot 11 and bounded on the east and south by the Mississippi River levee. Appellees also claimed this property and denied that appellant had acquired title by adverse possession for the statutory period of seven years. The trial court found this issue of adverse possession in favor of appellees and from the decree comes this appeal.

The sole question presented is whether appellant has established her claim of adverse possession by a preponderance of the testimony. After a careful review of the record presented we have concluded that appellant's claim of adverse possession has been sustained by her.

It appears that twelve witnesses testified in appellant's behalf and four for appellees. Four of appellant's witnesses were related to her. Appellant, Mrs. Wallace, testified that she and her husband (who died March 10, 1954) purchased the property from the Feezors in 1945; they knew nothing about the property before purchasing; the Feezors pointed out to them the boundary lines of the land which they claimed and were conveying to appellant. The land, she claimed, she and her husband bought fronted on Keiser Avenue east and west for a distance of about 107 feet to the levee. The levee is the east and south boundary line of the property for 300 feet. Going south the levee jogs (or curves) to the west boundary of the property to the toe of the levee. The Feezors told them that the property ''ran clear to the levee.'' She and her husband had a garden on this property and also a chicken pen, have lived on it and claimed ownership since 1945 and ''nobody questioned our ownership while Mike (her husband) was alive.''

Walter Garner (appellant's son-in-law) testified that he first became familiar with this property in 1946, knew where the lines were; that it measured 107 feet on Keiser Avenue and 300 feet from Keiser Avenue south to the levee; that Mrs. Wallace claimed the property and worked it ever since he had known the property, and that neither Clay Ayres nor anybody else had worked

that property since then. "Q. That is all she claims is what she bought from the Feezors? A. No, sir. She is claiming all of it. Mr. Clay Ayres said it was not his. Q. He said what was not his? A. That land back there that the dispute is over."

Mrs. Ray Phillips (not related) who had lived about 17 years in Old Town (had known this property for 16 years) and was acquainted with the Feezors, testified that the Feezors took care of and worked the land in question, that they raised corn on the land and that she had bought corn from them; that Mrs. Wallace also worked the same property that the Feezors worked. "Q. And Mr. Ayres has farmed it since he bought it in 1926? A. He has not put a plow in it as long as I have known it."

C. E. Sledge (not related) testified he did not know the Feezors but has known the Wallaces for ten years, since shortly after he came to Osceola, that he lived about a block from them. He did not know the size of Mrs. Wallace's lot, but knew what land Mrs. Wallace and her husband had in their possession. They had possession of all the land east of what would be Main Street if it crossed Keiser and went south to the levee, about 300 feet. Nobody has ever claimed or worked this property for the past ten years except the Wallaces. R. J. Fox, George Hall, and Herschel Coleman, all unrelated, corroborated the testimony of Mrs. Wallace in all material respects.

The testimony of the four witnesses presented by appellees tended to contradict the testimony of appellant's witnesses. We do not attempt to detail this testimony, however, it suffices to say, as indicated, that we have concluded that the preponderance of all the testimony relating to acts of use, possession and ownership by appellant supports her claim of title to the property by adverse possession.

The requirements of the law with reference to adverse possession are well established in this state, "In order that adverse possession may ripen into ownership, possession for seven years must be actual, open, notor-

ious, continuous, hostile, exclusive, and it must be accompanied with an intent to hold against the true owner . . . Adverse possession is one of the modes of acquiring title to property . . . It is said to be a possession which is commenced in wrong and continued in right. Again, it has been defined as the ripening of adverse possession into title by lapse of time. A title acquired by adverse possession is a title in fee simple, and is as perfect a title as one by deed from the original owner or by patent or grant from the government . . . to constitute an adverse possession, there need not be a fence or buildings, yet there must be such visible and notorious acts of ownership exercised over the premises continuously, for the time limited by the statute, that the owner of the paper title would have knowledge of the fact, or his knowledge may be presumed as a fact. In other words, it has been well said that if the claimant 'raises his flag and keeps it up' continuously for the statutory period of time, knowledge of his hostile claim of title may be inferred as a matter of fact,'' *Stricker* v. *Britt,* 203 Ark. 197, 157 S. W. 2d 18. ''Possession which is so open, visible, and notorious as to give the owner constructive notice of an adverse claim need not be manifested in any particular manner; but there must be such physical evidence thereof as reasonably to indicate to the owner, if he visits the premises and is a man of ordinary prudence, that a claim of ownership adverse to his is being asserted.'' *Terral* v. *Brooks,* 194 Ark. 311, 108 S. W. 2d 489.

For the error indicated the decree is reversed, and the cause remanded to enter a decree consistent with this opinion.

WARD, J., dissents.

PAUL WARD, Associate Justice, dissenting. I am unable to agree with the majority opinion. My reasons for dissenting will be briefly stated.

*One.* The Chancellor held that appellant and her predecessors in title did not show title by adverse possession to all of the land she claimed. The Chancellor, under

the well established rule of this court, should be affirmed unless his holding is against the weight of the evidence.

*Two.* The husband of appellant in 1945, received a deed to Lot 11, Humphrey's addition, Osceola. She has lived in a house on this lot, and also raised a garden thereon, ever since. It is conceded, as held by the Chancellor, she owns that parcel of land. However she claims, in this litigation, more land by adverse possession. As to this additional land, the Chancellor held, and I agree, she failed to show the necessary acts of possession.

The land claimed by appellant is bounded by a levee on the east and south and on the north by Keiser Avenue. There is no legal description of the west line of the property, but appellant claims about 107 feet frontage on the said avenue. The distance from the avenue to the levee on the south is about 300 feet.

*Three.* The great weight of the testimony as I view it, proves: Lot 11 covers only a portion of the land appellant claims; Lot 11 does not run south to the levee; she has no color of title to the *excess* land, and; she has not paid taxes on the excess land.

*Four.* Under the above state of facts it was encumbent on appellant to prove she exercised actual, pedal possession of the *excess* land. See: *Mooney, et al.* v. *Cooledge, et al.,* 30 Ark. 640; *Sturgis* v. *Hughes,* 206 Ark. 946, 178 S. W. 2d 236; *Miller* v. *Kansas City Southern Railway Co.,* 216 Ark. 304, 225 S. W. 2d 18, and; *Griffin* v. *Isgrig,* 227 Ark. 931, 302 S. W. 2d 777.

Not only was the Chancellor's holding supported by the evidence, but there is no definite testimony that appellant actually occupied all of the excess land which she claimed and which the majority opinion gives her.