Sherman *v.* Chicago Mill and Lumber Co.

5-2344                                        344 S. W. 2d 345

Opinion delivered March 20, 1961.

[Rehearing denied April 10, 1961.]

*Giles Dearing,* for appellant.

*Daggett & Daggett,* by *W. H. Daggett,* for appellee.

J. Seaborn Holt, Associate Justice. This is an action to quiet title by adverse possession to certain lands in Phillips County described as Section 24, Township 6 South, Range 2 East. Mrs. Beulah Sherman has brought this action to quiet title in her name to these lands after the Chicago Mill & Lumber Company had requested that she remove her fences from the land and cease to graze her cattle upon the area. The lower court found that Mrs. Sherman had adverse possession of certain cleared lands and the land on which her house and outbuildings were

situated but declined to award her possession of the entire tract of land. Mrs. Sherman has appealed this latter finding and Chicago Mill & Lumber Company has cross-appealed the former finding. Since the appeal and cross-appeal raise the question of adverse possession of the whole tract of land involved, we will discuss the appeal and cross-appeal together.

Few points of law are better established and settled in this state than that of adverse possession. Possession to be adverse must be actual, open, notorious, hostile, continuous and exclusive for a period of seven years with intent to hold against the true owner. *Wallace* v. *Ayres,* 228 Ark. 1007, 311 S. W. 2d 758. Viewing the evidence on trial *de novo* here, which includes voluminous testimony, photographs, bills, receipts and maps, we think that the preponderance of the evidence clearly shows that Bob Sherman, deceased, and his wife, Beulah Sherman, acquired adverse possession of the entire 333.7 acre tract in question and not to just the cultivated land and the area surrounding the immediate premises of the buildings which the chancellor below found. It would unduly extend this opinion to set forth all the acts which show adverse possession of the entire tract, but we set forth the following facts brought out by the evidence which we think sufficiently demonstrates adverse possession to the whole acreage involved.

First is the nature of the land involved. The particular land involved forms a peninsula which borders and juts out into a chute which was at one time a part of the Mississippi River. The chute runs around this peninsula in a horseshoe shape fashion. The body of water involved is not the main channel of the Mississippi River but is a chute which is known locally as "66 Chute" or "Sherman Chute". The Shermans have, since the early 1900's, maintained a fence across the neck of this peninsula and grazed cows, goats, mules and hogs within this area bounded by the fence on one side and the natural barrier formed by the river on the other sides. The fence on one side and the natural barriers on the other sides effectively enclosed the whole area. There was testimony that the

fence was rebuilt from time to time as it was destroyed by high water and overflows. This statement is substantiated by several photographs which show barbed wire running through the middle of large trees; other photographs show the wire only a few inches inside the bark of the trees. The original fence was built by Mr. J. H. Sherman who moved on the land in 1900 and lived there until 1918 but continued to farm the land until he gave it to one of his sons and daughter-in-law, Bob and Beulah Sherman, in 1936. Bob and Beulah Sherman have lived on this land continuously since 1936 until Christmas Day 1957 when Bob passed away. Mrs. Beulah Sherman and her children have continued to live on the place. During the time Bob Sherman was living the fence was maintained. One witness, not related to any of the parties, stated that he knew the Shermans when they moved on the place in 1936 and had helped Bob Sherman repair the fence and helped roundup the cattle on the place. He further testified that Mr. Sherman had started with just a few head of cattle but the year before he died there were over 100 head on this ground, a great number of hogs, four mules and a goat or two. Besides the grazing of cattle in the area, the Shermans have from time to time sold timber off the premises involved. The record is also replete with testimony that the Shermans have planted, cultivated, and harvested crops every year from the land. Additional acreage was cleared each year for more crops. The land was put in the government soil bank program and cotton acreage allotments secured by the Shermans from the land. A new house was built when the old, original family house was destroyed by a storm in 1946. Barns and outbuildings have been erected to house equipment an livestock. A family burial plot was established and used by the Shermans which contains twelve graves of relatives. Most of these acts have continued since 1900 when Mr. J. H. Sherman, father-in-law and grandfather of the present appellants, moved on the land and certainly such acts have been carried on continuously since 1936 when Bob Sherman and his wife [appellant here] returned to the home place to live.

Mr. Thomas J. Strode, county surveyor of Arkansas County and a civil engineer since 1927, made a detailed survey and plat of the lands claimed by Mrs. Sherman and he said of the entire 333.7 acre tract [as abstracted]: "Everything east of that fence in the whole peninsula has been disked up and there has been some means of cultivation, the whole area has been cultivated, I am sure. There is no undergrowth on it, the timber is very thin. It has the appearance of a picnic ground, resembles a picnic ground very much. I have been in the woods all my life and am familiar with forests. There is no comparison in the tract lying east of the fence with that lying west of the fence. This is due to the fact of cultivation in the past years. This chute is known locally as Sherman Chute. The banks are 1,000 feet apart at the narrowest point as seen from high bank to high bank, at low stage it is about 400 feet from waters edge to waters edge." The fence across all of the low side, along with the water on all other sides, served as an enclosure of the entire 333.7 acres. *Barboro* v. *Boyle,* 119 Ark. 377, 178 S. W. 378; *Goodrich* v. *Mitchell,* 177 Ark. 842, 7 S. W. 2d 979; *Dowdle* v. *Wheeler,* 76 Ark. 529, 89 S. W. 1002.

It is argued by Chicago Mill & Lumber Company that the possession of Bob Sherman was not hostile but permissive only. To prove this, Chicago Mill introduced into evidence a letter which states in substance that Bob Sherman recognizes the superior title of Chicago Mill to the land in question and expressly provides that the possession of Bob Sherman is permissive only. This letter was signed by Bob Sherman in 1953 with his mark. While it is true that such evidence as this is admissible even after the time has lapsed for acquisition of land by adverse possession to bear on the question of whether the claimant's possession was in fact hostile or not, *Deweese* v. *Logue.* 208 Ark. 79, 185 S. W. 2d 85, we cannot agree that the letter has any application here. First of all the letter refers to the body of land known as "Island 66" and the proof shows that the land in controversy here is not on "Island 66" but upon the mainland. Second, the letter refers to a small tract of land but the testimony

demonstrates that the Shermans have had possession of the entire peninsula which is composed of 400 acres of land, a rather large body of land and not a small tract. Last, the letter mentions the land as being in Section 14 when the proof indicates that the land here was in Section 24. We think the letter utterly fails to cast any light upon the character of the possession of lands involved in this controversy. As a sidelight, it might be mentioned that when Chicago Mill requested Mrs. Sherman to remove her cattle from Island 66, which is mentioned in the letter, she did so and it was only when the appellees requested that she remove her fences and cattle from the peninsula that the present action was filed.

The oft quoted language of Judge U. M. Rose found in the case of *Cunningham* v. *Brumback,* 22 Ark. 336, is highly relevant here: ''The law wisely holds that there shall come a time when even the wrongful possessor shall have peace; and that it is better that ancient wrongs should go unredressed than that ancient strife should be renewed.''

The judgment is reversed on direct appeal and the cause remanded with directions to enter a decree quieting title to the entire tract in question to Mrs. Beulah Sherman, appellant.

GEORGE ROSE SMITH and ROBINSON, JJ., dissent.