Marion **BUCKHANNAN**, Aaron Buckhannan and Victoria Ivory, Plaintiffs,

v.

Lee Vellar **NASH**, Defendant.

No. LR–62–C–166.

United States District Court
E. D. Arkansas, W. D.

April 25, 1963.

844

U. A. Gentry, Little Rock, Ark., for plaintiffs.

Joseph L. Buffalo, Jr., of Pope, Pratt & Shamburger, Little Rock, Ark., for defendant.

HENLEY, Chief Judge.

This is a suit in ejectment brought by plaintiffs, Marion Buckhannan, Aaron Buckhannan, and Victoria Ivory, citizens of California, against the defendant, Lee Vellar Nash, a citizen of Arkansas, to recover possession of Lots 3 and 4, Block 2, Pine Crest Subdivision, a part of the Northwest Quarter of the Southwest Quarter of the Southwest Quarter of Section 6, Township 1 North, Range 12 West, Pulaski County, Arkansas. The

property is located in the 800 Block on South University Avenue (formerly Hayes Street) in the City of Little Rock. Until comparatively recently the property was of little value, but within the last few years real estate development and highway construction in and around Little Rock have caused the value of the lots to be enhanced greatly, and it is conceded that the property is now worth approximately $20,000. Thus, federal jurisdiction is established.

In their complaint plaintiffs allege that the property was owned by one Clarence Hines at the time of his death in 1940, and that plaintiffs have succeeded to the title of Hines and are entitled to the possession of the property, which possession the defendant wrongfully withholds.

In her amended and substituted answer defendant denies that plaintiffs own the property and asserts that she is the true owner thereof by virtue of adverse possession and by virtue of a statutory confirmation decree in her favor entered by the Chancery Court of Pulaski County in 1959.

The cause has been tried to the Court and submitted upon the pleadings, certain discovery material, documentary evidence, oral testimony, and written briefs. This memorandum incorporates the Court's findings of fact and conclusions of law.

Both sides ultimately deraign title from Clarence Hines who is at times referred to in the record as Cleannis Hines. Hines acquired the lots by purchase about 1925 and died in possession thereof in 1940, a widower and without surviving children. There is evidence that Hines undertook to make a will, but that instrument was never admitted to probate.

Hines was survived by a half-brother, Jim Harris, who resided at Marianna in Lee County, Arkansas. Jim Harris died intestate soon after the death of Hines and was survived by certain identifiable heirs at law. In 1962 plaintiffs acquired the interests of those heirs, and plaintiffs' claim is based upon the title so acquired.[1]

Prior to 1933 Hines married Nancy Nash who had been married previously. She had one child by her previous marriage, namely Spencer Nash, the now deceased husband of the defendant, Lee Vellar Nash. The evidence indicates that none of the individuals just mentioned possessed more than limited education and business experience.

Nancy Hines died in 1933. Prior to that time Clarence Hines had requested Spencer Nash and the defendant to move onto the premises for the purpose of assisting him in caring for his wife. The Nashes acceded to this request and went into the occupancy of a small shed-like structure at the rear of the Hines premises. Clarence Hines and Nancy Hines occupied a somewhat larger dwelling at the front of the property. After the death of Nancy Hines, the Nashes continued to reside on the premises for the purpose of caring for Clarence Hines. Some years after the death of Nancy Hines the Nashes moved from the small building to the larger building, and Clarence Hines moved into the shed. Prior to 1939 the property forfeited to the State of Arkansas for non-payment of taxes but a redemption was effected, the redemption deed being executed in favor of Clarence Hines.

After Hines died in 1940 the Nashes continued to occupy the premises. Spencer Nash died in 1953, but defendant has remained in possession.

Faced with the claim of the defendant that she owns the property by virtue of adverse possession and the chancery decree, plaintiffs assert that defendant's

---

1. In point of fact, plaintiffs say that they are actually the grandchildren of Hines and, if so, they would have been his true heirs at law in preference to Harris. However, at pre-trial conference counsel for plaintiffs advised that his clients could not establish their claimed relationship to Hines, and that they were claiming solely on the strength of the Harris title.

possession has not been adverse, and that the confirmation decree is void and is open to attack in this action.

■ It is well settled in Arkansas that a plaintiff in ejectment must recover on the strength of his own title and not on the weakness of the title of his adversary. McPherson v. Blair, 224 Ark. 238, 273 S.W.2d 852; Moss v. Chandler, 209 Ark. 130, 189 S.W.2d 715; Gingles v. Rogers, 206 Ark. 915, 175 S.W.2d 192; Maney v. Dennison, 110 Ark. 571, 163 S.W. 783; Dowdle v. Wheeler, 76 Ark. 529, 89 S.W. 1002. However, where, as here, a plaintiff establishes legal title in himself and thereby makes a prima facie showing that he is entitled to possession of the property, the burden shifts to the defendant to defeat the legal title. Foster v. Elledge, 106 Ark. 342, 153 S.W. 819; Weaver v. Rush, 62 Ark. 51, 34 S.W. 256. And if the defendant relies on adverse possession to establish his own title affirmatively, the burden is upon him to make out his case by a preponderance of the evidence. Elledge v. Chafton, 224 Ark. 438, 274 S.W.2d 349; Smith v. Kappler, 220 Ark. 10, 245 S.W.2d 809; Eades v. Joslin, 219 Ark. 688, 244 S.W.2d 623; Howell v. Baskins, 213 Ark. 665, 212 S.W.2d 353; Hull v. Hull, 212 Ark. 808, 205 S.W.2d 211.

Since Jim Harris was the sole heir of Clarence Hines, and since plaintiffs have acquired the Harris title, they must prevail unless the evidence establishes a better title in defendant under either one or both of her theories.

■ As to adverse possession, the relevant Arkansas statute [2] insofar as here pertinent provides that all actions for the recovery of lands and interests therein must be commenced within seven years after the cause of action accrues. That statute is more than a statute of repose; where applicable, the effect of its operation is to vest title affirmatively in the adverse possessor, and the title thus vested is as good a title as one acquired from the true owner or from the sovereign. Smart v. Murphy, 200 Ark. 406, 139 S.W.2d 33; Stricker v. Britt, 203 Ark. 197, 157 S.W.2d 18; Hart v. Sternberg, 205 Ark. 929, 171 S.W.2d 475; Kimble v. Willey, E.D.Ark., 98 F.Supp. 730.

■■ In order for possession of land to ripen into title the possession must have been actual, open, notorious, hostile, exclusive, and continuous for the statutory period, and must have been accompanied by an intent to hold adversely to the true owner. Sherman v. Chicago Mill & Lumber Co., 233 Ark. 277, 344 S.W.2d 345; Wallace v. Ayres, 228 Ark. 1007, 311 S.W.2d 758; Mills v. Deniston, 227 Ark. 463, 299 S.W.2d 195; Berry v. Cato, 220 Ark. 36, 245 S.W.2d 824.[3] In order to obtain title by adverse possession it is not necessary for the possessor to have "color of title" to the property provided that he has been in the actual possession of the property for the requisite period of time, and provided that the other elements of adverse possession are present. Color of title is of significance only where the adverse claimant's occupancy does not extend to all of the property claimed. In such a case if the claimant has color of title, he is deemed to be in constructive possession to the limits of his grant; if he has no color of title, his possession affects only the portion of the tract which he has actually occupied. Cooper v. Cook, 220 Ark. 344, 247 S.W.2d 957; Pitts v. Johnson, 212 Ark. 119, 205 S.W.2d 449; Dierks Lumber & Coal Co. v. Vaughn, supra.

■ No one disputes in this case that following the death of Clarence Hines in 1940 defendant and her husband remained in the joint occupancy of the property until defendant's husband died in 1953, or that subsequent to his death defend-

2.  Ark.Stats., 1947, § 37–101.

3.  See also Judge Delehant's opinion in Dierks Lumber & Coal Co. v. Vaughn, E.D.Ark., 131 F.Supp. 219, for a thorough discussion of the Arkansas law of adverse possession and for an exhaustive compilation of Arkansas decisions.

ant has remained in the exclusive occupancy of the premises. The question then, as far as adverse possession is concerned, is whether the possession of the lots following the death of Hines was of such a quality as to destroy the legal title which Jim Harris inherited from his half-brother and to vest title in defendant.

From its consideration the Court is convinced that on this issue defendant has sustained her burden of proof, and that title in her by adverse possession has been established.

According to defendant and her witnesses, whom the Court credits, defendant and her husband became dissatisfied with their living arrangements after the death of Nancy Hines and decided to move away from the premises. However, Hines induced them to remain by agreeing to move into the shed himself and to permit them to live in the dwelling house. Hines also agreed orally that he would make a will in favor of either Spencer Nash or defendant, or in favor of both of them. Pursuant to this agreement Hines had an instrument of some sort prepared by a neighboring minister of the Gospel. There were two copies of this instrument. One of those copies has disappeared, but defendant tendered in evidence fragments of the other copy.[4] These fragments, received subject to plaintiffs' objection, are the bottom part of a piece of paper on which typing and signatures appear and another piece of paper on which nothing appears. The only typed text remaining legible on the first fragment is: "Block 2, Lots 3 and 4 in Pine Crest Addition, the same shall be

at the time of my death." Some distance below this text is the typed word "Witness," followed by a typed line for a signature, and below that line are three other typed lines. The signature of Ora Sanders appears next to the word "Witness," and his signature is followed on the next two lines by those of James Jackson and Rev. U. S. Arlington, 800 S. Pierce Street. Below that is the signature "C. Hines."

When the typing and the signatures are considered along with the other evidence in the case, it is inferable that the fragments are those of an instrument which Clarence Hines executed in an attempt to devise the lots here in question to either Spencer Nash or to the defendant, or to both Spencer Nash and the defendant, and that Ora Sanders, James Jackson, and the Reverend Mr. Arlington purported to sign as attesting witnesses, although putting their signatures in a position above that of Hines

Jim Harris, the half-brother of Hines, was notified of the latter's illness and came to Little Rock where he talked with defendant and her husband. After returning to Marianna, Harris came back to Little Rock for the funeral of Hines and spent the night with the Nashes. In the course of that trip he made inquiry of defendant as to the ownership of the lots, and he was told that the lots were owned by one or both of the Nashes by virtue of the purported will. Harris then gathered up some of the personal effects of Hines and left the premises. He never made any further claim to the property.[5]

4. Defendant testified that the lost copy of the instrument was the clearer and better preserved copy. When she became concerned about the state of her title in 1959, she took that copy to a Little Rock attorney, now dead, with the end in view of having the same admitted to probate. She testified that the attorney told her that the document could not be probated, and that she simply left it at his office and has never seen it since.

5. As has been said, the fragments of the "will," were received in evidence subject to plaintiffs' objections. Those fragments, of course, were not admissible as a will, or as a muniment of title, or as color of title, and were not admitted for such purpose. They were admitted solely for the purpose of showing or explaining the nature and quality of the possession of the property following the death of Clarence Hines. The Court was and is of the opinion that the fragments were admissible for that limited purpose.

For many years both lots have been enclosed by fencing. After the death of Hines, Spencer Nash made certain repairs to the property, which was in a dilapidated condition, and after the death of Nash, defendant made some repairs although not of an extensive nature. The house is located on the more northerly of the two lots and has been occupied continuously since the death of Hines. The south lot has been used primarily as a garden plot. For many years, both before and after the death of Hines and both before and after the death of Spencer Nash, defendant has paid the taxes on the property personally.

It is clear from the foregoing that from the time of the death of Hines, more than twenty years ago, the Nashes considered that the property belonged to one or both of them, and that no heir of Clarence Hines had any interest in it. It is clear also that after the death of her husband, about ten years ago, defendant had claimed to own the property individually.[6] Under that claim of ownership defendant has remained in the actual possession of the property to the exclusion of all others, and has performed open, notorious, and unequivocal acts of ownership. As long as the property was of little value, no heirs of Hines questioned defendant's ownership, and the present claim, made only after the two lots have become of great value, comes too late.

■■■ In his brief counsel for plaintiffs calls attention to the settled principle that possession which is permissive in its inception is presumed to continue to be permissive and does not become adverse until notice is brought home to the holder of the legal title that such title is no longer recognized by the occupant. Bailey v. Martin, 218 Ark. 513, 237 S.W.2d 16; Harp v. Christian, 215 Ark. 833, 223 S.W.2d 778; Bride v. Walker, 206 Ark. 498, 176 S.W.2d 148; Dial v. Armstrong, 195 Ark. 621, 113 S.W.2d 503. This principle is not applicable to this case, however, since Spencer Nash and defendant never occupied the premises in suit as tenants of Jim Harris or by virtue of his permission or sufferance. Immediately after the death of Clarence Hines they asserted to Harris that they or one of them claimed to own the property on the strength of the Hines "will." Thus, Harris knew from the very outset that the Nash possession was adverse to any claim of his.

As to the confirmation decree, the record reflects that in 1959 defendant caused to be filed in the Chancery Court of Pulaski County, Arkansas, a suit to quiet and confirm her title to the premises under the provisions of Act 79 of 1899, Ark.Stats., 1947, §§ 34–1901 et seq. In her petition and supporting affidavits it was stated that defendant had been in adverse possession of the lots for many years, that she had paid taxes thereon under color of title, that she did not know of any adverse claimants, and that there were no adverse occupants. As provided by the statute, a warning order was published advising of the pendency and nature of the action and giving the "unknown heirs" of Hines notice to appear and assert their claims. In her petition and other papers defendant made no reference to Jim Harris; he was not named as a defendant, was not named in the warning order, and no summons or other process was served upon him. He entered no appearance in the action.

On June 19, 1959, the Chancery Court proceeding upon the record before it entered its decree granting defendant's petition and quieting and confirming in her the title to the property. On January 17, 1962, within the three year period prescribed by the statute, Aaron

6. In this case it is not necessary to determine whether after the death of Spencer Nash defendant's continued possession was adverse to any claims or interests of the children of Spencer Nash and defendant. The Nash children are not parties to this suit, and it does not appear that there is any dispute between the children and their mother.

Buckhannan, filed in the chancery proceeding a petition to vacate the confirmation decree. In that petition, in which the other plaintiffs here did not join, Buckhannan set up a claim to the property based upon the supposed relationship of himself and his sisters, who are his fellow plaintiffs here, to Clarence Hines, no reference being made to Jim Harris. On February 28, 1962, defendant moved to strike the petition filed in the Chancery Court by Aaron Buckhannan, and subsequently filed a response to his petition. As far as the record before this Court reflects, no action has been taken by the Chancery Court on Buckhannan's petition to vacate the original decree, or on defendant's motion to strike or on her response, and the whole matter is still pending in chancery.

In the instant case plaintiffs contend that the confirmation decree rendered by the Chancery Court is fatally defective in that although defendant knew of the existence of Jim Harris and of his alleged interest in the property, he was not made a party as required by statute and was not served with process. Plaintiffs also contend that the chancery decree is void because defendant did not in fact have any color of title to the property. In connection with these contentions plaintiffs have brought into the record here copies of all of the documents constituting the record in the Chancery Court.

A confirmation decree rendered pursuant to Act 79 of 1899 is immune from collateral attack, except for jurisdictional defects apparent on the face of the record. Champion v. Williams, 165 Ark. 328, 264 S.W. 972; Kulbeth v. Drew County Timber Co., 125 Ark. 291, 188 S.W. 810. However, such a decree may be attacked directly on any meritorious ground by the filing of a petition in the original proceeding within the three year period which has been mentioned. And it may also be directly attacked by a plenary suit having for its specific purpose the setting aside of the decree for fundamental errors such as fraud or lack of jurisdiction, which would render the decree void ab initio. Welch v. Burton, 221 Ark. 173, 252 S.W. 2d 411, and cases there cited.

As plaintiffs' complaint, denominated Complaint In Ejectment, is drawn, their attack on the confirmation decree would seem to be collateral. Brooks v. Baker, 208 Ark. 654, 187 S.W.2d 169; Wilder v. Harris, 205 Ark. 341, 168 S.W.2d 804; Cassady v. Norris, 118 Ark. 449, 177 S.W. 10; Mitchell v. Village Creek Drainage District, 8 Cir., 158 F.2d 475. And, as indicated, such an attack cannot be maintained successfully unless the fundamental error relied upon appears on the face of the record, which includes the pleadings and process and affidavits as well as the decree itself. Champion v. Williams, supra; Kulbeth v. Drew County Timber Co., supra; see also Woolfolk v. Davis, 225 Ark. 722, 285 S.W.2d 321; Marlin v. Harrison, 214 Ark. 342, 216 S.W.2d 45; Allison v. Bush, 201 Ark. 315, 144 S.W.2d 1087.

Although plaintiffs contend earnestly that the alleged errors which they say render the decree vulnerable to collateral attack appear on the face of the chancery record, the Court is not so sure that such is the case. Extraneous proof is required to establish the existence of Jim Harris, his relationship to Clarence Hines, and his onetime interest in the property, and also to establish defendant's actual lack of color of title. And the Court has grave doubt that it is entitled to look behind the chancery decree.

However, since the Court has found and concluded that defendant is entitled to prevail on her claim of adverse possession, it is unnecessary for the Court to make a firm determination as to whether plaintiffs' attack on the decree, however it may be characterized, can be considered here or whether, if open to consideration, the attack has any merit. Hence, the Court will do no more than express its doubt as to whether the attack is maintainable in this action.

In her amended and substituted answer defendant prays not only that the complaint be dismissed, but that she have

such other relief as may be proper. A decree will be entered dismissing the complaint with prejudice and quieting and confirming defendant's title to the lots against plaintiffs and any persons in privity with them.