WEAVER v. RUSH.

Opinion delivered February 8, 1896.

EJECTMENT—PRESUMPTION OF TITLE.—Proof by a plaintiff in eject-
ment that his ancestor died in possession of the land, claiming the
same under color of title, makes a *prima facie* case in his favor, and
throws on the defendant the burden of showing that defendant or
some third person owned the land or was entitled to its possession.

PRESUMPTION OF TITLE—WHEN NOT OVERCOME.—Evidence by de-
fendants in ejectment that a third person held a deed to the land
under which his title was traced back for a little over twenty
years, without proof that he or any of his grantors had ever been
in possession or paid any taxes, is insufficient to overcome the
*prima facie* title shown by plaintiff's evidence that his ancestor
died in possession of the land claiming under color of title.

STRIKING DEED FROM FILES—DISCRETION.—In ejectment by a widow
and heirs to recover land of which their decedent died possessed,
it is an abuse of discretion to strike from the files a deed by the
widow conveying to defendant her unassigned dower interest in
the land because it was not filed earlier; the cause should have
been transferred to the equity docket, to enable defendant to avail
himself of the equitable title so conveyed.

CONVEYANCE OF UNASSIGNED DOWER—EFFECT.—A conveyance by a
widow of her dower in land before it has been assigned to her
cannot be enforced in a court of law, but will be upheld in a court
of equity.

Appeal from Crittenden Circuit Court.

JAMES E. RIDDICK, Judge.

STATEMENT BY THE COURT.

It appears from the record in this cause that in the
year 1868 a widow Cook resided on a portion of the north-
east quarter of section fourteen, in township nine north,
range six east, then in Cross, but now in Crittenden,
county, Arkansas. There is nothing in the record that
convinces the court of the true character of her holding,
whether as a mere squatter or by proper title under
purchase from some one else. In 1868, John W. Roman,

the ancestor, husband and intestate, respectively, of the plaintiffs in this cause, rented a part, or possibly the whole, of the six or eight acres which Mrs. Cook had in cultivation; and while living there as her tenant he married her, and they lived together as man and wife until she died in 1883 or 1884, and he continued to reside on some part of the lands involved in this suit until he died, in 1888. At various times between the date of Roman's entry on said land and the date of his death, he purchased the lands involved herein at tax sales, and from the State of Arkansas under alleged forfeitures for nonpayment of taxes, including the west half of the northeast quarter of said section fourteen; Roman being such purchaser himself directly at such tax sales or from the state, or being the purchaser from others who had previously bought from, or held under, the state, his last purchase of any of said lands being from Martha Gordon in 1885, who held under a donation deed from the state.

When Roman died, in 1888, his widow and children removed from the land in suit, and went we know not where, nor the cause of their leaving, as the record is silent on those points. On October 30, 1889, W. F. Werner, as administrator, B. F. Rush, as guardian of Roman's minor children, Mary J. Roman, the adult daughter, and his widow, Mary L. Roman (then Mary L. Cave, she having married J. D. Cave after Roman's death) instituted this action of ejectment in the Crittenden circuit court against the defendants, Weaver, Hart, Carmack and Lossen, who were, we suppose, the tenants of W. C. Stephenson (hereinafter referred to as the real defendant); and in their complaint they alleged that John W. Roman died in possession of all the lands involved herein, claiming title under color of title, and that the defendants were in unlawful possession. They further allege Roman's ownership of all of said lands by reason of sales made to him, and they exhibit the deeds. They

further base his ownership by reason of his actual adverse possession of all the lands for the several periods of limitation, seven, five and two years. The defendants filed their answer, composed of fifteen or twenty paragraphs, admitting their possession, and claiming that it is rightful, and denying the title of plaintiffs. They also filed several lengthy amendments to their answer, alleging in detail that the various tax deeds of John W. Roman were void, and of no effect; and that Roman had no right to purchase outstanding tax titles, as he went into possession of a part of the land originally under the widow Cook, as her tenant; and that, as he had received the rents and profits of a part of the land, he should be required to pay the taxes on all, or to redeem all; also that Roman's holding of a part of the lands jointly with Mrs. Cook, after he married her, rebuts the idea of his exclusive adverse possession. The defendants further defend their right of possession by alleging that in 1868 one Dickson and wife sold and conveyed all of said lands to one Fitten (both non-residents), and that in December, 1888, Fitten sold to one Burns, and that, four days later, Burns sold to W. C. Stephenson, the real defendant herein; and that on the same day Mary L. Cave, who is one of the plaintiffs, and the widow of Roman, sold, surrendered, and quitclaimed all of said lands and her dower interest therein to the said W. C. Stephenson, who, on his own motion, was made a party defendant to the suit of plaintiffs—which sales were represented by deeds duly exhibited with said amendment to the answer of defendant. But the lower court, on motion of counsel for plaintiffs, struck out the deed of Mary L. Cave to Stephenson, on the ground that it was not filed in apt time; to which action of the court the defendants, by their counsel, excepted at the time. The defendants also filed their

motion to transfer the cause to equity, which the court overruled.

At the hearing of the cause in the circuit court, oral testimony of witnesses was introduced before the court sitting as a jury, tending to show that John W. Roman died in possession of all the lands; that as fast as he bought a tract he placed laborers or tenants on it, and cleared and cultivated parts of each tract, and otherwise improved the same, and that this condition of affairs existed at the time of Roman's death. One witness testified that Mr. Fitten came to his house, and he went with him to Roman's house, but Roman was absent. That Fitten told Roman's wife that he (Fitten) owned the lands. She neither denied nor admitted the title. Fitten stated to her that he would sell Roman the land, or would let him keep it until the rents paid Roman for the improvements he had made. Fitten returned, and spent the night at witness' house, and said he would go again to see Roman next morning; but witness saw Fitten no more, and he does not think that Fitten was ever in the county after that time. Roman subsequently told witness that Fitten came to see him on that visit, and laid claim to the land, but that he would not recognize Fitten's claim. There was also oral testimony as to the rental value of the lands, and as to the value of the improvements made by the defendant, Stephenson.

The court found for the plaintiffs as to the recovery of the lands, and, after allowing the defendant Sephenson compensation for the improvements made by him, found that he was indebted to plaintiffs several hundred dollars, the same being the excess in value of the rents over and above the value of the improvements made by Stephenson. The court, then, of its own motion, reduced the following findings of fact and declaration of law to writing, to-wit: (1) "The court finds that John W. Roman, the ancestor of plaintiffs, died in the

actual possession of the lands described in the complaint, claiming the same as his own under color of title, and that the defendants do not show any title." (2) " The court declares the law to be that when plaintiffs show that their ancestors died in the actual possession of land under color of title, claiming the same as his own, this is sufficient to recover against persons not having a better title ; and, defendants having shown no title, the court therefore finds for the plaintiff in, this case." The court also made in writing a couple of " declarations of law," at the request of counsel for defendants, which we regard as being entirely abstract merely, and as not having any bearing on the merits of the case.

Judgment was entered for the plaintiffs in the lower court as above indicated. Motion for new trial by Stephenson's counsel was overruled by the court, bill of exceptions filed, and an appeal by the defendants to this court.

*W. G. Weatherford* for appellants.

1. The tax deeds of Roman were void. 32 Ark. 131 ; *id.* 496 ; 33 *id.* 716 ; 29 *id.* 340 ; 3 *id.* 274 ; 42 *id.* 104.

2. Roman, being in possession and receiving the rents, etc., could not acquire title by tax sale. 33 Ark. 275 ; 37 *id.* 578 ; 33 *id.* 267.

3. Roman's possession was not *adverse.* 50 Ark. 345 ; 45 *id.* 89 ; 47 *id.* 511 ; 150 U. S. 597, 608.

4. The mere fact that Roman died in possession *claiming* title does not conclude defendants. 33 Ark. 152 ; 31 *id.* 336 ; 40 *id.* 110. Under the old ejectment practice, proof of possession was *prima facie* evidence of *seizin,* and was always good against a stranger. 2 Gr. Ev. sec. 555. But in Arkansas *title* is evidenced by assurances in writing, and the period of *adverse* occupancy sufficient to vest title is regulated by statute. 47 Ark. 418.

5. Stephenson had acquired Mrs. Cave's (the widow's) interest, and it was error to allow her to recover.

6. The judgment for rents is excessive. Stephenson was charged the increased rental value of improvements put on the land by him. 31 Ark. 744; 55 *id.* 374; 52 *id.* 384; 47 *id.* 457.

*T. P. McGovern* and *J. C. Hawthorne* for appellees.

1. Proof of possession under color of title by the plaintiff's ancestor is sufficient to entitle plaintiff to recover, unless the defendant shows a better title. 40 Ark. 108; 31 *id.* 334; 21 *id.* 62; 33 *id.* 151.

2. No errors are pointed out, nor any defects charged or proved that would render any of Roman's tax deeds void.

3. The evidence shows that plaintiff's ancestor was in the adverse possession of all the lands for more than seven years, and this amounted to "an investiture of title." 34 Ark. 534; *ib.* 547; 38 *id.* 181.

4. The land commissioner's certificate, introduced in support of the motion for new trial, does not include a single acre involved in this suit.

5. As to the rents and profits, the evidence is ample to sustain the finding of the court.

When possession presumptive of title.

HON. JAS. P. BROWN, Special Judge (after stating the facts). No principle of the law of ejectment is better settled than that where a plaintiff proves that his ancestor died in possession of real estate, under color of title, and claiming to be the owner, he has proceeded far enough to make out at least a *prima facie* case; and that the defendant in such a case, if he would overcome the *prima facie* showing thus made by the plaintiff, must show, either in himself or some third party, a better title or right of possession than the plaintiff himself has. This canon of ejectment law does not mean, however,

that merely because a plaintiff's ancestor may have died in possession of real estate, claiming the same under color of title, he can prevail in ejectment proceedings against a defendant who, while he could show no right of possession or title in himself, might show that some third party is the true owner of the land in suit, and entitled to its possession. While the rule everywhere is that in ejectment the plaintiff must recover, if at all, on the strength of his own title, not only as against the defendant, but the whole world; yet neither the rule itself nor its wisdom is in the least impaired by allowing the *prima facie* case under the circumstances above referred to. In the case at bar, the *prima facie* case was made out by the proof adduced by the plaintiffs at the hearing in the lower court; and the burden of proving, by the ordinary rules of evidence, that either the defendants, or some one else other than the plaintiffs, owned the land, or had a right to its possession, at once devolved on the defendants. They first tried to convince the court that W. C. Stephenson was the rightful owner, and in support of the effort they exhibited a deed, dated in 1868, from Dickson to Fitten; then a deed dated December 10, 1888, from Fitten to Burns; and next a deed dated December 14, 1888, from Burns to Stephenson, and also a deed of the same date from one of the plaintiffs, Mary L. Cave, widow of John W. Roman (married to Cave after Roman's death), to Stephenson. In this connection, it is proper to state that there has never been an assignment of dower in Roman's realty to his said widow. Consequently Mrs. Cave's conveyance of her dower interest to Stephenson conferred upon him no right that he could enforce in a court of law. Thus, with the burden of proof on them, we find the defendants tracing their title only back to the Dickson deed of 1868, and without a particle of proof as to Dickson's title, or that either he, Fitten, or Burns ever possessed the lands for an hour, or

*When such presumption not overcome.*

that either of them ever paid one cent of taxes on the property in their lives. Such a showing falls far short of discharging the burden of proof imposed on the defendants. Furthermore, if Fitten had any faith at all in his title to those lands, the manifest indifference with which he regarded them, as property, during the entire twenty years of his alleged ownership, is perhaps without a parallel in the ownership of property in Arkansas; and right here we announce that we can find nothing at all of a substantial nature in the contention of counsel for appellants to the effect that Roman and wife at any time held the lands under Mr. Fitten, or that either of them regarded the claim of Fitten with any feeling akin to seriousness.

But, in addition to that effort of defendants to establish Stephenson's title, and, by way of trying to show an outstanding title in some third party, the defendants allege in their answer, or one of their amendments thereto, that the various tax titles under which Roman claimed title at the time of his death were all void; but beyond exhibiting copies of certain records from the county courts of Cross and Crittenden counties (which copies certainly do not explain, within themselves, anything prejudicial to Roman's titles), and without pointing out or in anywise explaining to the lower court, or to this court, how or in what respect said transcripts from said county courts proved the invalidity of Roman's titles, no proof at all was adduced to prejudice those titles, except that in their motion for a new trial, and by way of newly discovered evidence, the defendants alleged that the title to all of said lands was in the St. Francis Levee District, under the act of the legislature of 1893 donating certain lands of the state to said levee district. But, on a careful examination of the list of lands described in the land commissioner's certificate filed by defendants in support of said alleged fact, last above

referred to, we fail to find in said certificate *a single foot of the lands involved in this suit.*   Besides this, there was positive oral testimony to the effect that, at the time of his death, John W. Roman had been in the actual possession of all of the lands, claiming them adversely as his own for the several periods of limitation set out in the complaint; and it is the settled practice of this court to never disturb findings of fact on oral testimony of witnesses, unless they are so clearly erroneous as to shock one's sense of justice.  Furthermore, we regard it as a material part of this case that the defendant Stephenson himself recognized the Roman title when he bought from and paid Roman's widow, $1,250, for her interest, *as widow*, in the estate; and filed in support of his right of possession of the lands, and as evidence of his title, so far as it went, the deed conveying to him said widow's interest.   Counsel for appellants insist that, as Roman went into possession of some part of the northeast quarter of section fourteen as the tenant of his subsequent wife, he could not hold adversely as to her.   As an abstract proposition of law, counsel is probably correct in this; but there is no testimony in the record that convinces us, to the extent of reversing the judgment of the lower court, that the small clearing on which the widow Cook resided when Roman married her was situated in the west half of said quarter.   And this view, as just expressed, is perhaps a sufficient response to the still further contention of appellant's counsel that Roman, being in possession, and receiving the rents and profits, could not purchase outstanding tax titles.   We might, if we deemed it necessary, go still further, and say that the record discloses no positive fact that stood in the way of Roman's right to purchase outstanding tax titles to any of the lands in this controversy.

So, taking the evidence altogether, we do not think that the defendants have discharged the burden of proving that either they or third parties have a better title or right of possession to the lands in suit than the administrator and heirs of J. W. Roman have; nor that the Roman title is not the best title. Therefore, so far as the judgment of the lower court awards to said administrator and heirs their proper interest in said lands, said judgment should be affirmed. But there is a feature of the judgment of the lower court to which this court cannot lend its assent or approval. We refer to the action of the trial court in striking out, on motion of the plaintiffs, the deed of Mrs. Cave (Roman's widow), by which she conveyed to the defendant Stephenson all of her interest as such widow in the Roman lands, merely because, as alleged by plaintiffs in their motion to strike, said deed was not filed in apt time. Mrs. Cave, one of the active plaintiffs, had sold that valuable interest of hers to Stephenson for the expressed consideration of twelve hundred and fifty dollars; and she ought not to be permitted by the courts to thus not only disregard her solemn conveyance, but also actively join Roman's children and administrator in their effort to deprive Stephenson of the lands which she had so recently sold to him, and accepted his money for, and placed him in possession of. Ordinarily, the discretion of a circuit judge would not be reviewed by this court in striking a deed from the files as evidence in a cause on the ground that the party relying on it had failed, without good excuse shown, to file it earlier and at a more proper stage of the proceedings. But, inasmuch as the defendant's motion to transfer to equity had already been denied, and inasmuch as the very substance and vitals of the litigation, so far as Mrs. Cave was concerned, were involved in that deed, it appears to us that, instead of striking the deed out of the case, the

better practice would have been to have transferred the whole cause to the equity side of the court's docket, on the court's own motion, as soon as it was discovered from the filing of that deed, not only that the defendant Stephenson had valuable equities in the case which could avail him only in a court of equity, but also that a refusal to transfer to equity would amount to nothing short of encouragement, in effect, to Mrs. Cave to perpetrate a gross injustice on said defendant. If the filing of the Cave deed had in any way "surprised" the plaintiffs, the court might have granted them their own time in preparing to resist its effects; or, if there was any ground for the motion to strike out the deed, of a more substantial character than the objection to its introduction assigned by plaintiffs, this court's attitude on this feature might now be different. But to sustain the lower court's action on this point would amount to a denial of plain, simple justice to the defendant. Not only that, but the effect would be to aid and enable one of the plaintiffs in this cause to perpetrate an act of injustice, just such as courts are designed to prevent. The judgment of the circuit court is therefore reversed, so far as it deprives the defendant Stephenson of his rights under his purchase from Mrs. Cave.

A widow's dower in the realty of her deceased husband, before it is assigned to her as the statute directs, is a mere "thing in action" that cannot be the subject of a conveyance by her to a stranger, so as to confer on him any rights that he can enforce in a court of law. But courts of equity do not hesitate to uphold such conveyances. Scribner on Dower, vol. 2, pp. 42–47, secs. 33–38, and cases therein cited. And as the dower interest bought by Stephenson from Mrs. Cave might have affected the personal judgment of the trial court against him for rents in excess of improvements made by him if his said interest in the dower had been enforced by

Effect of conveyance by widow of unassigned dower.

that court, it is necessary for this court also to reverse the judgment for the recovery of money.

The judgment of the circuit court of Crittenden county in this cause is therefore reversed, as regards the amount of money adjudged to be paid by Stephenson to the plaintiffs, and in so far as said judgment deprives the said Stephenson of his rights under his purchase from Mrs. Cave, as widow of John W. Roman; otherwise the judgment should be affirmed, so far as it awards to the administrator and heirs of J. W. Roman the recovery of the fee of the lands involved in this controversy, subject only to said dower interest now owned by the said Stephenson; such interest of the said Stephenson and of the said estate to be subject to the homestead rights, if any, of the minor children of the said John W. Roman; his said widow having abandoned her homestead rights in said lands, if any such homestead right existed, by her sale of her entire interest in said lands to said Stephenson; and said homestead, if any, to be enjoyed wholly and solely by the minor children of the said John W. Roman, as the law provides, until they arrive at the ages of twenty-one years.

This cause is therefore remanded to the circuit court of Crittenden county, with directions to transfer it to the equity docket of the court, there to be proceeded with in accordance with equity practice, and not inconsistent with this opinion. And after the dower interest of the said widow of John W. Roman in said lands shall have been set apart and assigned for the benefit of the said Stephenson, as the law provides in the matter of assignment of dower, the said circuit court is hereby directed to ascertain and settle the question of improvements made on said lands by the said Stephenson, so far as he may be entitled under the law to compensation for said improvements, and also the

question of rents owed by him, according to the laws in such cases made and provided.

Perhaps the effects of this reversal might have been as thoroughly attained by affirming the judgment of the lower court in this cause *in toto*, and by leaving the appellant Stephenson free to pursue, if he should see fit to do so, by a separate suit in chancery, the remedy, and to seek the relief, to which we have indicated he is entitled, under the rule of estoppel and *res judicata* announced by this court in the case of *Dawson* v. *Parham*, 55 Ark. 286. But, as such course would necessitate an entirely new proceeding in chancery, thereby forcing the parties to incur additional costs that might be avoided, and as it is the policy of the law that a multiplicity of suits be avoided, and that there be an end to litigation, we have concluded, after due reflection, that the foregoing decision to reverse and remand is best for the interests of all herein concerned.