KNIGHT v. ROGERS.

4-6300.                                                    151 S. W. 2d 669

Opinion delivered June 2, 1941.

*Caudle & White,* for appellant.

*Arnett & Shaw,* for appellee.

Holt, J.   Appellants brought suit in ejectment in the Logan circuit court, northern district, against W. S. Rogers, appellee, to recover possession of land in the north one-half of section 34, township 9 north, range 23 west, in Logan county, Arkansas.   Upon motion of appellee, the cause was by agreement transferred to equity. Appellants alleged in their complaint that they are the owners of the north one-half of section 34 and the south one-half of section 34, township 9 north, range 23 west, and are entitled to possession; that appellee, Rogers, has been in possession of this property since January 1, 1934.

Appellee answered denying the claim of appellants to the title, or the right to the possession of the land.

Upon a trial the court found the issues in favor of appellee and dismissed appellants' complaint for want of equity.   This appeal followed.

The land in controversy lies in the north one-half of section 34, and it is undisputed that appellee is in possession.   On behalf of appellants the evidence discloses that on July 18, 1932, Mrs. S. C. Howell, for a consideration of $700, entered into a contract to convey to appellants the land described as the south one-half of section 34, and on January 16, 1934, she executed a warranty deed to the south one-half of section 34 to appellants in accordance with the terms of the contract.

On October 11, 1935, Charmelcy Jean Cravens Hollenberg, Jesse Edgar Cravens Ownby, Emma Batson Cravens Gulick and Sophe Cravens Howell executed a quitclaim deed for a recited consideration of $10 to the north one-half of section 34 to appellants.   The grantors in this quitclaim deed are the heirs of J. E. Cravens, deceased.   The records of these lands prior to about 1888 were destroyed with the burning of the Logan county courthouse and appellants state in their brief "after the year 1888 the lands in section 34 in some manner passed

to J. E. Cravens, these appellants' ancestor in title."
The record before us, however, does not show that this
land ever passed to J. E. Cravens. There is evidence
that J. E. Cravens during his lifetime, and his heirs
after his death, from time to time paid the taxes on this
land, but these payments were not at any time made
under color of title.

Appellee is the owner of the land adjoining, and
lying west of the land in the north one-half of section 34,
the land involved here, and his land is described as "Be-
ginning at a point 220 yards east of southwest corner of
southeast quarter (SE¼) of northeast quarter (NE¼),
run north to Arkansas river's edge, and beginning from
same corner as described above and running thence east
to Arkansas river's edge, all above being in section 33,
township 9 north, range 23 west, and containing 20 acres
more or less, together with all accretions thereunto
formed by the Arkansas river," situated in the northern
district of Logan county, Arkansas.

Appellee acquired this property by deed from Mrs.
Sallie Rogers March 14, 1932, and she acquired it from
George O. Patterson by deed in 1916.

Section 34 is immediately east of, and joins, section
33. The Arkansas river runs almost due north and south
across section 34 and all of this section is taken up by
the river bed with the exception of the land here involved,
which lies in the west part of the north one-half of section
34 extending from the river's edge west to the section line
between section 33 and section 34, and the land in the
south one-half of section 34 extending from the river's
edge west to this section line between section 33 and
section 34.

This suit being one in ejectment, in order for appel-
lants to recover the land involved here they must do so
on the strength of their own record title and not on the
weakness of appellee's title. In *Haynes* v. *Clark*, 196 Ark.
1127, 121 S. W. 2d 69, this court said: "This being a suit
in ejectment, it is well settled by numerous decisions of
this court that appellants were not entitled to succeed in
recovering the tract of land involved, unless they could

do so upon the strength of their own title. They were not entitled to rely on the weakness of the title of appellees. *Beardsley* v. *Hill,* 77 Ark. 244, 91 S. W. 757; *Allen* v. *Phillips,* 87 Ark. 185, 112 S. W. 403; *Winn* v. *Whitehouse,* 96 Ark. 42, 131 S. W. 70; *Wallace* v. *Hill,* 135 Ark. 353, 205 S. W. 699; *Robert* v. *Brown,* 157 Ark. 230, 247 S. W. 1058; *France* v. *Butcher,* 165 Ark. 312, 264 S. W. 931; *Robinson* v. *Cravens,* 176 Ark. 682, 4 S. W. 2d 533.''

And in *Bunch* v. *Johnson,* 138 Ark. 396, 211 S. W. 551, it is said: ''There is nothing in the record from which it can be inferred that appellants or their grantors were ever in the actual possession of the real estate in question. They must, therefore, depend, for a recovery, upon the strength of their record title and not the weakness of appellees' title. *Wolf* v. *Phillips,* 107 Ark. 374, 155 S. W. 924; *Brasher* v. *Taylor,* 109 Ark. 281, 149 S. W. 1107.''

Appellee, as we have indicated, is in possession of this property, and appellants have never been in possession, and we think appellants have failed in their attempt to establish title, or right to possession. The quitclaim deed to appellants of October 11, 1935, *supra,* conveyed nothing because the grantors had no title to convey.

Appellants' claim of title to this property on account of tax payments made at irregular intervals by their grantors and the ancestor of the grantors, can avail them nothing for the reason that these tax payments were not made, according to the evidence disclosed by this record, by anyone holding color of title.

In *Fletcher* v. *Malone,* 145 Ark. 211, 224 S. W. 629, this court said: ''The mere payment of taxes without color of title does not, no matter how long continued, constitute such an invasion of the owner's rights as to call for action on his part, for that alone could never create a cloud on his title, nor operate as a divestiture thereof. *Penrose* v. *Doherty,* 70 Ark. 256, 67 S. W. 398; *Jackson* v. *Boyd,* 75 Ark. 194, 87 S. W. 126; *Chatfield* v. *Iowa & Ark. Land Co.,* 88 Ark. 395, 114 S. W. 473.''

Appellants also insist that they have title to the land in question under the provisions of § 8709 of Pope's Digest which provides in part that ''All land which has

formed or may hereafter form, in the navigable waters of this state, and within the original boundaries of a former owner of land upon such stream shall belong to and the title thereto shall vest in such former owner, his heirs or assigns, or in whoever may have lawfully succeeded to the right of such former owner therein. . . .''

It was the purpose of this legislation to give title to the former owner where his land reformed as an island within the boundaries of his original grant. But for this provision such island would become the property of the state. We think, however, that this section has no application here for the reason that the great preponderance of the testimony (in fact we find none to the contrary) shows that the land here involved is not an island, but is, in fact, land formed and added to appellee's land by accretions.

Appellants next complain of the trial court's refusal to permit them to introduce evidence of a conversation between Mrs. Sallie Rogers, appellee's grantor, and G. O. Patterson in 1915. At the time of the trial Mr. Patterson had been dead for several years. The evidence sought to be introduced is stated by appellants' counsel in the following language: ''We offer to prove by this witness that in 1915 he talked with Mr. Patterson about his holdings and Mr. Patterson stated to him that his land only ran one-half mile east from the center of section 33 and that it stopped at the east section line of 33.''

We think no error was committed here. This evidence is general in its scope. It does not attempt to point out any fixed and definite boundary line or monuments as marking any boundary line. In fact, the testimony of Mrs. Rogers discloses that at the time the alleged conversation took place the east boundary line of the land which Patterson was conveying to her, and which she conveyed to appellee, was in the Arkansas river.

In the recent case of *Norden* v. *Martin, ante,* p. 180, 149 S. W. 2d 550, this court quoted with approval the rule as to the admission of testimony of this character as announced in 8 Am. Jur., p. 814, § 96, as follows:

''The declarations of a deceased former owner are admissible in evidence, but in order that they may be

received, they must establish some fact, as a cornerstone or particular marked line, and they are not admissible when they are mere statements that certain lands lay within the boundary of such former owner, or that it was the same as had been conveyed in a certain deed, or merely as to facts which might tend to a general reputation as to the true boundary. Evidences of declarations by a deceased owner as to boundaries is inadmissible unless made while he was actually in possession and claiming it as owner.''

Finally appellants claim that the trial court should have ordered division of the north one-half of section 34, the land here involved, between the parties as an accretion to the lands of both parties, and relies upon the case of *Malone* v. *Mobbs*, 102 Ark. 542, 146 S. W. 143, Ann. Cas. 1914A, 479. We think the rule laid down in that case can have no application here for the reason that the great preponderance of the testimony is, as the court found, to the effect that the land here involved, all of which lies in the north one-half of section 34, was formed and added to appellee's land by accretions from west to east, and is not an accretion from south to north to the south one-half of section 34, which south half, it is conceded, appellants own.

As has been indicated, the river cuts across the north one-half and the south one-half of section 34 from the north almost directly due south. The record reflects that land has also formed by accretion from west to east on the south one-half of section 34, appellants' land. The testimony of W. M. Baumgartner, one of the appellants, is to this effect (quoting from his testimony): ''Q. When was the first time any cultivating was done in section 34? A. About 1931 or 1932. Q. That was when it began to come back? A. In the south half, yes, and I guess about the same time in the north half. Q. That part in the southwest corner of north half of 34 was put in in 1931 or 1932 at the same time the south half of 34 was put in? A. Yes, sir.'' The surveyors' maps in evidence corroborate this testimony.

Finding no error, the decree is affirmed.