SLIP OPINION

Cite as 2015 Ark. App. 588

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–15–129

IDA KING and KENNETH CALDWELL
APPELLANTS

V.

LESLIE JACKSON and KAREN JACKSON

APPELLEES

Opinion Delivered  October 21, 2015

APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION [NO. 60CV-2011-192]

HONORABLE WENDELL GRIFFEN, JUDGE

REVERSED AND REMANDED WITH INSTRUCTIONS

## PHILLIP T. WHITEAKER, Judge

Appellants Ida King and Kenneth Caldwell ("King and Caldwell") appeal a Pulaski County Circuit Court order dismissing their complaint for ejectment against appellees Leslie Jackson and Karen Jackson.[1]  Because it cannot be determined whether the trial court found that King and Caldwell failed in their burden of proving a prima facie case for ejectment or whether the trial court improperly failed to shift the burden of proof to the Jacksons upon a showing of prima facie evidence by King and Caldwell, we reverse and remand.

---

[1]  This is the third time this case has been before us.  The first two times, the appeal was dismissed for lack of a final order.  *King v. Jackson,* 2014 Ark. App. 488 (failure to dispose of outstanding claim for trespass); *King v. Jackson*, 2013 Ark. App. 264 (voluntary dismissal of trespass claim without prejudice not sufficient).  After the second appeal was dismissed for lack of a final order, King and Caldwell entered a voluntary dismissal of their trespass claim with prejudice and stated in their notice of appeal that they were abandoning any pending and unresolved claims.  The order is now final and appealable.

SLIP OPINION

This appeal involves a dispute over entitlement to possession of real estate. The real estate in question was purchased by Elbert Caldwell and his wife in 1958 by warranty deed.[2] The deed more particularly described the property as follows:

> All of Tract 4 and all of Tract 3, Except that part of Said Tract 3 which lies North of Upper Hot Springs Highway, in MARION ACRES ADDITION to Little Rock, Arkansas, subject to an easement 20 ft in width along the East side thereof for road right-of-way.[3]

In 1995, Elbert Caldwell entered into some form of a land transaction with the Jacksons. The nature of the transaction is at the heart of the current dispute. King and Caldwell contend that the transaction was a lease. The Jacksons contend that the transaction was a sale of approximately three acres. It is undisputed that the Jacksons took possession of approximately three of the six acres purportedly conveyed to Elbert Caldwell in 1958. They placed a manufactured home on the property. When the manufactured home burned down in 1997, the Jacksons constructed a 1400-square-foot home on the property over the next ten to twelve years.

In 2008, King and Caldwell obtained two deeds to the property in question. The first was a warranty deed dated May 5, 2008, filed of record in the office of the Recorder of Pulaski County, Arkansas, as Instrument No. 2008030575.[4] The second was a correction

---

[2] Elbert Caldwell is the father of the appellants, King and Caldwell.

[3] The description of the property in the warranty deed gives no indication as to the amount of property being conveyed. The testimony before the court was that it consisted of approximately six acres.

[4] This warranty deed was referenced in the correction deed but was never introduced as evidence.

deed dated August 6, 2008. This correction deed purportedly corrects some error in the May 5, 2008 warranty deed.

Elbert Caldwell died in 2009. In October 2010, King and Caldwell sent the Jacksons a letter to vacate the property. The Jacksons did not respond to the letter or vacate the property.

In January 2011, King and Caldwell filed a complaint against the Jacksons for trespass and ejectment in the Pulaski County Circuit Court. In their complaint, they alleged ownership of the subject property pursuant to the correction deed. King and Caldwell then alleged in their complaint that the Jacksons had entered into a verbal ten-year lease agreement with Elbert Caldwell and that the agreement contained an option to buy the property for $6,000. King and Caldwell claimed that the lease expired in 2006 without the Jacksons renewing the lease or paying any sums toward the lease. They further alleged that the Jacksons built a permanent dwelling on the property without Elbert Caldwell's written permission. Finally, they alleged that they had rescinded any permissive use of the property by virtue of an October 21, 2010 letter and that the Jacksons had refused to vacate the property.

The Jacksons answered the complaint, denying that they had entered into a ten-year lease with Elbert Caldwell. Instead, they asserted that they had entered into an agreement to purchase the land "described in the complaint" for $6,000 and that they completed the purchase of the property on November 8, 1996, when they paid Elbert Caldwell the balance owed on the property of $4,550. The Jacksons claimed that Elbert Caldwell never provided

3

them with a deed to the land because he could not afford to have a survey conducted. The Jacksons admitted building a home on the property after the manufactured home had burned, but asserted that Elbert Caldwell was well aware of the construction and had visited the site to observe the progress. The Jacksons stated that they began to pay the taxes on the property in 1996, but they paid Elbert Caldwell rather than the Pulaski County Treasurer because the entire six-acre parcel was still in Elbert Caldwell's name. Finally, they claimed that Elbert Caldwell deeded the property to King and Caldwell because he was afraid the property would get caught up in a potential lawsuit, but that Elbert Caldwell assured them that King and Caldwell would have the property surveyed and would convey clear title to them.

The dispute between the parties proceeded to a bench trial. At the trial, both King and Caldwell testified and presented evidence to the court. They both claimed obtaining ownership to the property from their parents pursuant to the correction deed. King and Caldwell claimed that they had paid the property taxes since obtaining title. Both denied that the Jacksons had ever paid any property taxes or that they had received any rent from the Jacksons. They admitted that the Jacksons had been in possession of some of the property, approximately three acres, but contended that this possession was because of a ten-year lease that had since expired. They demanded that the Jacksons be ejected.

In response, both Leslie and Karen Jackson testified and presented evidence. They both testified that they had purchased approximately three acres from Elbert Caldwell and had been in possession of the property since 1995. They admitted that they did not have a deed to the property, but introduced a handwritten receipt purportedly signed by Elbert Caldwell

4

as proof of payment. The receipt noted the date of the transaction, the address of the property "20427 Col. Glenn Road, Little Rock, Ar 72210," and the payment made of $4,550 received from "Leslie and Karen Jackson" for "Balance on land – 3 acres." The Jacksons contended that this payment was the final installment of the purchase price of $6,000.[5] In addition to paying the purchase price, the Jacksons presented evidence that they paid the property taxes directly to Elbert Caldwell because he still had the deed for the entire 6-acre tract, and that they built their 1400-square-foot house on the property after the fire had destroyed their initial manufactured home. They both reported that Elbert Caldwell was well aware of the home construction and voiced no objections.

After hearing the evidence, the trial court issued its final written order, concluding that King and Caldwell "failed to show that they are entitled to have the [Jacksons] ejected from the property" and dismissing their complaint for ejectment. King and Caldwell appeal this order, arguing (1) that the trial court failed to shift the burden of proof to the Jacksons once a prima facie showing of entitlement to possession was presented and (2) that there was insufficient evidence presented by the Jacksons to overcome their title to the property.

In order to sustain an action in ejectment, the plaintiff must establish that he is legally entitled to possession of the property. Ark. Code Ann. § 18-60-201 (Repl. 2003). The plaintiff may show entitlement to possession by proving that he has title thereto or the right of possession thereof, and that the defendant is in possession. Ark. Code Ann. § 18-60-206

---

[5] They claim to have made two payments on the property. The receipt produced at trial showed the final payment on the property, and the first receipt was destroyed in the manufactured-home fire.

(Repl. 2003). Where a plaintiff makes a prima facie showing that he is entitled to possession of the property, either by holding title or holding a right of possession, the burden then shifts to the defendant to defeat the legal title. *See Buckhannan v. Nash*, 216 F. Supp. 843, 846 (E.D. Ark. 1963) (citing *Foster v. Elledge*, 106 Ark. 342, 153 S.W. 819 (1913) and *Weaver v. Rush*, 62 Ark. 51, 34 S.W. 256 (1896)). However, a plaintiff must succeed, if at all, on the strength of his own title and cannot depend on the weakness of the defendant's title. *Dorey v. McCoy*, 246 Ark. 1244, 1248, 442 S.W.2d 202, 204 (1969); *Knight v. Rogers*, 202 Ark. 590, 151 S.W.2d 669 (1941); *Bunch v. Johnson*, 138 Ark. 396, 211 S.W. 551 (1919).

Here, it is unclear on what basis the trial court premised its dismissal—want of prima facie evidence of title, want of prima facie evidence of possession, or proof by the Jacksons of a superior right of possession or title. The written order simply concludes that King and Caldwell failed to prove they were entitled to have the Jacksons ejected from the property without specification. When a written order does not specify the basis for the trial court's conclusion, the appellate court may utilize the oral pronouncement of the trial court to determine the intent behind its written orders. *See Ward v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 491. However, looking at the oral pronouncement of the trial court does not make the basis for the written order any clearer. King and Caldwell had the burden of proving, at a minimum, a prima facie entitlement to ejectment by either title or right of possession. They presented evidence of title by introduction of the correction deed. In its oral pronouncement, the court noted that the correction deed did not indicate an aggregate total acreage. However, it is not clear whether the court was actually making a ruling concerning

prima facie proof of title. What the court did say was that King and Caldwell had failed to prove their right to possess the three acres that was the subject of the ejectment action, expressing doubts that the property was the subject of a lease agreement as opposed to having been sold. However, again, it is not clear if this was a ruling concerning the prima facie proof of title or an improper failure to shift the burden of proof to the Jacksons as King and Caldwell allege. Therefore, we reverse and remand for a determination of whether King and Caldwell presented a prima facie showing of entitlement to possession of the property and, if so, whether the Jacksons presented sufficient evidence to defeat legal title.

Reversed and remanded with instructions.

GLADWIN, C.J., and HOOFMAN, J., agree.

*Johnson & Vines, PLLC*, by: *James "Chris" McNeal* and *J. Andrew Vines*, for appellants.

*Jeffrey Weber*, for appellees.