PHILLIP T. WHITEAKER, Judge
Appellants Ida King and Kenneth Caldwell ("King and Caldwell") appeal a Pulaski County Circuit Court order dismissing their complaint for ejectment against appellees Leslie and Karen Jackson.[1] For the reasons set out below, we reverse and remand.
King and Caldwell claim to be the owners of land located in Pulaski County. The Jacksons claim ownership interest in a partial tract of the same land. Both parties trace their purported ownership interest back to Elbert Caldwell. Elbert is the father of King and Caldwell. Elbert is the purported seller of the interest purchased by the Jacksons.
Elbert and his wife purchased some property in Pulaski County, Arkansas. The property encompassed by the warranty deed, dated August 14, 1958, was more particularly described as:
All of Tract 4 and all of Tract 3, Except that part of Said Tract 3 which lies North of Upper Hot Springs Highway, in MARION ACRES ADDITION to Little Rock, Arkansas, subject to an easement 20 ft. in width along the East side thereof for road right-of-way.
The warranty deed did not specify the aggregate amount of property purchased.
In 1995, the Jacksons entered into some type of business transaction with Elbert. The Jacksons contend that the business transaction was a sale of land. King and Caldwell contend that the business transaction was a ten-year lease. Nevertheless, the Jacksons took possession of approximately three of the acres purportedly conveyed to Elbert Caldwell in 1958. They initially placed a mobile home on the property, which burned down in 1997. Afterwards, the Jacksons constructed a 1400-square-foot home on the property over the next ten to twelve years.
In 2008, Elbert issued two deeds to King and Caldwell. The first was a warranty deed dated May 5, 2008 (Warranty Deed).[2]
*121 The second was a correction deed dated August 6, 2008 (Correction Deed).[3] The Correction Deed described the property as:
All of Tract 4 and all of Tract 3 of Marion Acres Addition, Pulaski County, Arkansas, more particularly described as follows to-wit with the following EXCEPTIONS:
(1) Beginning at a point which is 20 feet west of the point where the south side of the right-of-way of the Upper Hot Springs Highway intersects the east side of Tract 3 MARION ACRES ADDITION to Little Rock, thence west 104.4 feet, thence south 417 feet, thence east 104.4 feet, thence north 417 feet to the point of beginning, containing one acre, more or less.
(2) East 125 feet of that part of Tract 3 Marion Acres Addition to Little Rock, Arkansas, lying South of Upper Hot Springs Highway, less and except the East 20 feet thereof for Road.
(3) A Part of TRACT # 3, MARION ACRES ADDITION, to the City of Little Rock, Arkansas, lying South of the Upper Hot Springs Highway, and more particularly described as follows: Beginning at a point which is 125 feet West of the Southeast corner of said TRACT # 3, MARION ACRES ADDITION, and run thence West 50 feet; thence North to the South r/w line of the Upper Hot Springs Highway, a distance of 50 feet, more or less, to a point which is due North of the point of beginning; thence South to the point of beginning.
(4) Part of Tract 4, Marion Acres Addition to the City of Little Rock, more particularly described as follows: Beginning 125 feet W of SE corner of Tract 4, thence West 105 feet, thence North 625 feet, thence East 105 feet, thence south 625 feet to point of beginning, containing 1.5 acres more or less;
(5) Beginning at a point which is 20 feet west of the point where the southside of the right-of-way of the Upper Hot Springs Highway intersects the East Line of Tract 3, Marion Acres Addition, thence South 342 feet to the point of beginning, from the point of beginning thus established proceed West 154.4 feet, thence South 75 feet, thence East 154.4 feet, thence North 75 feet to the point of beginning.
The Correction Deed did not convey the entirety of the property described in the 1958 deed, and like the 1958 warranty deed, it did not give any indication as to the amount of property being conveyed.
Elbert died in 2009. In October 2010, King and Caldwell sent notice to the Jacksons (1) claiming ownership of the land, (2) advising the Jacksons that their ten-year lease of the property had expired in 2006, (3) revoking and rescinding any further permissive use of the property by the Jacksons, and (4) demanding they remove within thirty days of the letter any and all encroachments they had created. The Jacksons did not respond to the letter or vacate the property.
In January 2011, King and Caldwell filed a complaint against the Jacksons for *122 trespass and ejectment in the Pulaski County Circuit Court. In their complaint, they alleged ownership of the subject property as described in the Correction Deed from Elbert. They alleged that the Jacksons had entered into a verbal ten-year lease agreement with Elbert and that the agreement contained an option to buy the property for $6,000. King and Caldwell claimed the lease expired in 2006 without the Jacksons' renewing the lease or paying any sums toward the lease. They further alleged that the Jacksons built a permanent dwelling on the property without Elbert's written permission. Finally, they alleged that they had rescinded any permissive use of the property by virtue of an October 21, 2010 letter and that the Jacksons had refused to vacate the property.
The Jacksons answered the complaint, denying that they had entered into a ten-year lease with Elbert. Instead, they asserted that they had entered into an agreement to purchase the land "described in the complaint" for $6,000 and that they completed the purchase of the property on November 8, 1996, when they paid Elbert the balance of $4,550 owed on the property. As proof of payment, they attached a handwritten receipt purportedly signed by Elbert.[4] The Jacksons admitted that they did not have a deed to the three acres but claimed that Elbert never provided them with a deed to the land because he could not afford to have a survey conducted. The Jacksons admitted building a home on the property after the mobile home burned but asserted that Elbert was well aware of the construction and had visited the site to observe the progress. Although they did not file a counterclaim, the Jacksons stated that they began paying the taxes on the property in 1996 but claimed they paid Elbert rather than the Pulaski County Treasurer because the entire six-acre parcel was still in Elbert's name. Finally, they claimed that Elbert deeded the property to King and Caldwell because he was afraid the property would get caught up in a potential lawsuit and that Elbert had assured them that King and Caldwell would have the property surveyed and would convey clear title to them.
A bench trial was held on January 17, 2012, during which Caldwell, King, and the Jacksons each testified regarding their claimed interests in the property. After the hearing, the trial court issued an order concluding that King and Caldwell had "failed to show that they are entitled to have the [Jacksons] ejected from the property" and dismissing their complaint for ejectment. King and Caldwell appealed, and we reversed and remanded because it was unclear from the trial court's order whether it had dismissed the claims on an appropriate basis. King v. Jackson , 2015 Ark. App. 588, at 6, 474 S.W.3d 83, 87.
On remand, the trial court again denied King and Caldwell's petition for ejectment. First, the trial court found that King and Caldwell had failed to establish that they were entitled to possess the three acres at issue because the Correction Deed did not provide a total aggregate acreage to show that the conveyance included all six acres of the tract. The court then held that the Jacksons had proved they purchased three acres of the property by virtue of an oral contract and that their partial performance of the contract took the matter out of the statute of frauds. Finally, the trial court held that King and Caldwell were estopped from denying that the Jacksons held legitimate evidence of their right to possession. As a result, the trial court denied their *123 action for ejectment, holding that King and Caldwell had failed to meet their burden by a preponderance of the evidence that they were legally entitled to possess the three acres of the property that was the subject of the ejectment actions and that they had failed to show that they were entitled to have the Jacksons ejected from the property.
King and Caldwell again appeal the trial court's decision, alleging that it erred (1) in its application of the burden of proof in finding that they had not established a right of possession of the property; (2) in finding that they had failed to establish title to the property; (3) in finding that the Jacksons had a right of possession of the property; and (4) in holding that they were estopped from denying the Jacksons' right of possession.
In order to sustain an action in ejectment, the plaintiff must establish that he or she is legally entitled to possession of the property. Ark. Code Ann. § 18-60-201 (Repl. 2003). The plaintiff must succeed, if at all, on the strength of his or her own title and cannot depend on the weakness of the defendant's title. Dorey v. McCoy , 246 Ark. 1244, 1248, 442 S.W.2d 202, 204 (1969) ; Knight v. Rogers , 202 Ark. 590, 151 S.W.2d 669 (1941) ; Bunch v. Johnson , 138 Ark. 396, 211 S.W. 551 (1919). However, when a plaintiff establishes legal title in himself or herself and thereby makes a prima facie showing that he or she is entitled to possession of the property, the burden then shifts to the defendant to defeat the legal title. See Buckhannan v. Nash , 216 F.Supp. 843, 846 (E.D. Ark. 1963) (citing Foster v. Elledge , 106 Ark. 342, 153 S.W. 819 (1913) ; Weaver v. Rush , 62 Ark. 51, 34 S.W. 256 (1896) ).
Here, the trial court erred in holding that King and Caldwell failed to establish a prima facie case of legal title to the property. At trial, King and Caldwell introduced into evidence a correction deed purporting to cover the property in dispute. Clearly, a deed constitutes prima facie evidence of title, and King and Caldwell produced a deed at trial. The Jacksons never disputed, argued, or presented any evidence to suggest that the three acres at issue were not contained in the legal description provided in the Correction Deed. To the contrary, the Jacksons argued that the Correction Deed conveyed the three acres in question to King and Caldwell, but because they had purchased the three acres from Elbert prior to the conveyance to King and Caldwell, the three acres actually belong to them. Thus, the trial court's ruling that King and Caldwell failed to establish a prima facie case of legal title to the property was clear error.
Once King and Caldwell presented a prima facie showing of legal title, then the burden shifted to the Jacksons to either defeat legal title by showing that the King and Caldwell deed was void, invalid, or did not otherwise encompass the land in question or show that the Jacksons had superior title or right of possession to it. Because the trial court erred in finding that King and Caldwell failed in their burden of proving a prima facie case of legal title, the remaining analysis is tainted. Therefore, we reverse and remand for a correct analysis of the shifting burden. Because we reverse and remand for reconsideration of the evidence, we need not address issues two and three.
As for the last issue, King and Caldwell argue that the trial court was clearly erroneous in its finding that they were estopped from denying the Jacksons' right of possession. Estoppel in pais is the doctrine by which a person may be precluded by his or her acts or conduct, or by failure to act or speak under circumstances in which he or she should do so from *124 asserting a right that the person otherwise would have had. Sterne, Agee & Leach, Inc. v. Way , 101 Ark. App. 23, 27-28, 270 S.W.3d 369, 374 (2007). The elements of equitable estoppel are (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his or her conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; and (4) the party asserting estoppel must rely on the other's conduct to his or her detriment. Id. (citing King v. Powell , 85 Ark. App. 212, 148 S.W.3d 792 (2004) ). A party who by his or her acts, declarations, or admissions, or by the failure to act or speak under circumstances in which the party should do so, either with design or willful disregard of others, induces or misleads another to conduct or dealings that the person would not have entered upon, but for such misleading influence, will not be allowed because of estoppel, afterward to assert his or her right to the detriment of the person so misled. Id. However, there is no estoppel in the absence of a change of position in reasonable reliance. Id. Whether there has been actual reliance and whether it was reasonable are usually questions for the trier of fact. Id.
In finding that King and Caldwell were estopped from denying the Jacksons' possession of the property in question, the trial court specifically found that King and Caldwell had failed to present evidence that they (1) were unaware that the Jacksons occupied the property; (2) objected to the occupancy of the property by the Jacksons; and (3) purchased the entire six-acre tract from Elbert because the correction deed did not indicate an aggregate total acreage. However, King and Caldwell did present evidence at trial that they were aware that the Jacksons occupied the property and that they had sent the Jacksons a letter objecting to their occupation of the property and ordering them to vacate. Moreover, the Jacksons agreed at trial that the property they occupied was within the six acres that Elbert once owned and that had been conveyed to King and Caldwell. Thus, the facts the trial court relied on to support its estoppel ruling are clearly erroneous. On remand, the court may reconsider the Jacksons' estoppel claim based on the evidence presented.
Reversed and remanded.
Vaught and Murphy, JJ., agree.

This is the fourth time this case has been before us. The first two times, the appeal was dismissed for lack of a final order. King v. Jackson , 2014 Ark. App. 488, 2014 WL 4748473 (failure to dispose of outstanding claim for trespass); King v. Jackson , 2013 Ark. App. 264, 2013 WL 1775731 (voluntary dismissal of trespass claim without prejudice not sufficient). The third time we reversed and remanded because it was unclear from the circuit court's order whether it had dismissed the claims on an appropriate basis. King v. Jackson , 2015 Ark. App. 588, 474 S.W.3d 83.

This Warranty Deed is referenced in the Correction Deed, as appearing of record in the office of the recorder of Pulaski County, Arkansas, as Instrument No. 2008030575. The Warranty Deed itself was not introduced into evidence and is not a part of our appellate record.

The Correction Deed listed "Kenneth Elbert Caldwell" as the grantor and "Ida Marie King and Kenneth Elbert Caldwell" as the grantees.

The receipt noted the date of the transaction, the address of the property, "20427 Col. Glenn Road, Little Rock, Ar 72210," and the payment made of $4,550 received from "Leslie and Karen Jackson" for "Balance on land - 3 acres."