Cite as 2025 Ark. App. 578

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-24-621

| | |
|---|---|
| JANET FULTZ JOHNSON<br><div align="right">APPELLANT</div><br>V.<br><br>DAVID L. COHICK, JR., AND<br>VIRGINIA COHICK<br><div align="right">APPELLEES</div> | Opinion Delivered December 3, 2025<br><br>APPEAL FROM THE CARROLL COUNTY CIRCUIT COURT, EASTERN DISTRICT<br>[NO. 08ECV-23-141]<br><br>HONORABLE SCOTT JACKSON, JUDGE<br><br>REVERSED AND REMANDED |

**CASEY R. TUCKER, Judge**

Appellant Janet Fultz Johnson appeals the May 29, 2024 order of the Carroll County Circuit Court finding that a 1996 warranty deed was the "controlling deed" with respect to certain property, which ultimately resulted in the dismissal of Janet's complaint for ejectment against appellees, David Cohick, Jr., and Virginia Cohick.[1] Janet contends that an unrecorded 1992 warranty deed delivered to her mother, Lana Sue Fultz ("Lana"), is the controlling deed for purposes of the ejectment action.

I. *Background*

---

[1]Janet and her mother, Lana, who died after the trial but before the issuance of the final order from the trial court, were the plaintiffs in the ejectment action.

On October 7, 1991, Jerry Fultz ("Jerry") paid $60,000 to Charlotte and James O'Gorek in exchange for a warranty deed that was recorded on October 25, 1991, for the following described property (the "Property"):

> A part of the NE1/4 of the NE 1/4 Of Section 22, Township 20 North, Range 23 West, more particularly described as follows: Commencing at the Northeast Corner of said forty; thence with a fence West 699.11 feet to a fence corner; thence with a fence S, 11'05'25" E, 226.91 feet to the Point of Beginning and the Northwest Corner of the herein described tract; thence with a fence and the North line of this tract S, 89'03'26" E, 359.50 feet to the Northeast Corner of this tract; thence S, 52'35'47" E, 262.94 feet to a point in the centerline of State Highway 311 for the Southeast Corner of this tract; thence with the Centerline of State Highway 311 and the South line of this tract, the following calls: S, 40° 13'39" W, 174.55 feet; S, 49'50'38" W, 232.54 feet; S, 66'18'11" W, 190.12 feet to a point for the Southwest Corner of this tract; thence with a fence and the West line of this tract N, 11'10'32" W, 535.42 feet to the Point of Beginning.

On June 18, 1992, Jerry, who was not married at the time, executed a warranty deed conveying the Property to himself; his father, Dale; his mother, Lana; and his sister, Janet, as joint tenants with right of survivorship. This deed ("1992 Deed") was not recorded until May 15, 2023.

Jerry married Joy Ann Fultz ("Joy Ann") in 1994. On July 3, 1996, Jerry executed a warranty deed (the "1996 Deed") conveying the Property to himself and Joy Ann as tenants by the entireties. On March 9, 2017, Jerry and Joy Ann executed a quitclaim deed conveying the Property to Jerry and Joy Ann, as husband and wife, and to David L. Cohick, Jr., and Virginia Cohick, as husband and wife, as joint tenants with right of survivorship.[2]  Jerry died

---

[2]David L. Cohick, Jr., is Joy Ann's son.

on October 21, 2022.  On May 11, 2023, Joy Ann executed a quitclaim deed conveying her interest in the Property to the Cohicks, which was recorded on May 12, 2023.

Lana and Janet filed the action against the Cohicks for ejectment and damages on October 5, 2023.

## II. *Trial*

At the trial, before witnesses were called to testify, the parties stipulated that after the initial purchase of the Property by Jerry in 1991, none of the grantees were "bona fide purchasers for valuable consideration" when title was transferred through the deeds.

Lana testified first at the trial. She testified that she and her husband, Dale, had two children, Jerry and Janet. Jerry, who was single, delivered the 1992 Deed to Lana and Dale. Lana testified regarding the delivery of the 1992 Deed:

| | |
|---|---|
| [LANA'S ATTORNEY]: | What did you do with this deed after Jerry gave it to you? |
| LANA: | I put it back in the envelope, and he said keep it for me and keep it safe, you know, and I said okay. |
| [LANA'S ATTORNEY]: | Okay. |
| LANA: | So I put it in the top chester [sic] drawers where I had other paperwork. |
| [LANA'S ATTORNEY]: | All right. Did you ever think about taking it to the courthouse and filing it at the courthouse? |
| LANA: | I thought Jerry did all that. I didn't ~ I just knew it was a deed. |

Lana further testified that after Jerry married Joy Ann in 1994, she and Dale continued to live in the home on the Property.[3] But the week after Jerry died, Joy Ann told Janet that Lana had to move from the Property because Joy Ann was going to sell it.

When questioned on cross-examination, Lana said she had assumed Jerry had taken out a mortgage on the Property when he purchased it and that she "supposed" he kept paying it when he got married. She stated that Jerry lived in a mobile home on the Property and moved Joy Ann in with him after they got married. At some point, the Cohicks purchased a small home and moved it onto the Property. Lana admitted that she had never discussed the 1992 Deed with the Cohicks, and Jerry had never discussed the 1996 Deed with her. On redirect, Lana testified that she paid for a new roof and windows on the home she lived in and paid for its insurance without reimbursement from Jerry or Joy Ann.

Janet testified that on January 21, 2023, she was helping clean out some drawers and pack up pursuant to the notice to vacate that Joy Ann had given Lana. During the packing up, they found the abstract and closing documents regarding Jerry's initial purchase of the Property along with the 1992 Deed, which she recorded on May 15, 2023.

Janet testified that after her mother moved from the Property in March 2023, the Cohicks moved into the home Lana had lived in. She testified that her mother had told her about the 1992 Deed "years ago," but she did not realize she was a named grantee. Janet then asked the court to eject the Cohicks and Joy Ann from the Property and find that she

---

[3]Dale passed away June 28, 2009; but Lana continued to live on the Property.

and her mother were entitled to damages based on the reasonable rental value of the property for the previous twelve months.

Joy Ann testified that she still lives on the Property in the mobile home that she shared with Jerry before his death. She said that she and Jerry married in 1994 and lived in an apartment in Green Forest. She testified that on July 3, 1996, Jerry executed and recorded the 1996 Deed conveying the Property to himself and to Joy Ann as tenants by the entireties. Joy Ann was unaware that Jerry had executed and delivered the 1992 Deed to the Property to his parents and sister. Joy Ann stated she and Jerry refinanced the Property in the early 2000s and included financing on what they owed on the mobile home. She could not remember the amount of the mortgage. Joy Ann testified that she and Jerry received no assistance from Dale, Lana, or Janet paying the mortgage.

Joy Ann testified that on March 9, 2017, she and Jerry executed and recorded a quitclaim deed conveying the Property to Jerry and Joy Ann, as husband and wife; and to her son David L. Cohick, Jr., and his wife, Virginia Cohick, as husband and wife, as joint tenants with right of survivorship. After Jerry's death, Joy Ann executed a quitclaim deed conveying her interest in the Property to the Cohicks on May 11, 2023, which was subsequently recorded the next day. Joy Ann conceded that the Cohicks paid no consideration either time the Property was deeded to them. A mortgage against the Property still exists in Joy Ann's name, but Joy Ann testified that the Cohicks have been paying the mortgage since Jerry died. Joy Ann stated that after Lana moved, the Cohicks moved into the home on the Property. Joy Ann stated that she was concerned about Lana living on the

Property after Jerry died, so she called Janet and told her that Lana needed to move closer to her because she could not take care of Lana. She testified that Lana had fallen twice, and she was concerned.

On cross-examination, Joy Ann testified that she was aware the home Lana lived in had a new roof, but she stated that insurance paid for the roof. Joy Ann's testimony, which conflicted with Lana's, was that she understood from the "insurance people" that she and Jerry paid the insurance. Joy Ann stated that she was aware that Lana paid for the windows but added that Jerry was on that note as well. She stated that she was never made aware of the 1992 Deed and had assumed Jerry was allowing his parents to live on the Property because they were his parents.

David Cohick, Jr., testified that he and his wife, Virginia, had lived on the Property for approximately six years. He stated that, with the permission of Joy Ann and Jerry, he and Virginia had originally placed a forty- by twelve-foot storage building on the Property and had converted it into a tiny home. He had understood that Joy Ann and Jerry owned the Property and that no one had ever mentioned the 1992 Deed or that any other person had an ownership interest in the Property. He testified that he began paying the mortgage in December 2022 and had been paying since that date.

On cross-examination, David testified that the mortgage was not in his and Virginia's names because their credit was "not good enough." Virginia was the final witness. She confirmed that she and David had been paying the mortgage since Jerry's death and stated that she had no knowledge of the 1992 Deed when they began paying the mortgage.

6

III. *The Ruling*

By order entered on May 29, 2024, the court dismissed the complaint for ejectment, finding:

> 6. After consideration of the testimony presented, no evidence indicates that Joy Ann Fultz had any knowledge of her husband's previous conveyance of the subject property to other family members. . . .

> 7. Jerry Lee Fultz and Joy Ann Fultz paid for the subject property during the course of their marriage and Joy Ann Fultz continued to do so after the death of Jerry Lee Fultz. . . . For those reasons, the warranty deed to the subject property, filed July 3, 1996, is (the) controlling instrument regarding ownership of the subject property.[4]

IV. *Analysis*

The standard of review on appeal is whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. *James v. Mounts*, 2023 Ark. 53, at 8, 660 S.W.3d 801, 807. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Bauer v. Beamon*, 2023 Ark. 194, at 9, 678 S.W.3d 782, 788. While the reviewing court gives due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be accorded

---

[4]In order to sustain an action for ejectment, the plaintiffs must establish that they are legally entitled to possession of the property. Ark. Code. Ann. § 18-60-201 (Repl. 2015). When plaintiffs establish legal title in themselves and thereby make a prima facie showing that they are entitled to possession of the property, the burden shifts to defendant to defeat legal title. *King v. Jackson*, 2018 Ark. App. 570, 565 S.W.3d 118. In the present case the trial court found that the plaintiffs—Lana and Janet—failed to establish legal title in themselves and thus dismissed the case without making further findings with respect to the ejectment action.

their testimony, it does not defer to the trial court on a question of law. *O'Neal v. Love*, 2015 Ark. App. 689, at 5, 476 S.W.3d 846, 850.

It is a fundamental real estate principle that title to real property is effective upon valid delivery of the deed. *First Sec. Bank v. Geels*, 2011 Ark. App. 294, at 4–5, 383 S.W.3d 437, 440. Delivery passes title between parties even if it has not been recorded. *Mehaffy v. Clark*, 2022 Ark. App. 268, at 6, 646 S.W.3d 651, 654. The record reflects that Jerry purchased the Property in 1991 for $60,000. It is undisputed that Jerry delivered the 1992 Deed to Lana and Dale, naming himself, Dale, Lana, and Janet as joint tenants with right of survivorship. It is further undisputed that the 1992 Deed was not recorded until May 15, 2023. Per *Mehaffy*, Jerry individually, as the grantor, passed title to the Property to himself, Lana, Dale, and Janet, as grantees, under the 1992 Deed.

However, under Arkansas law, an earlier delivered but unrecorded deed does not defeat title in all cases if the subsequent deed is recorded. Pertinent to the case at bar, the claim of a purchaser for valuable consideration who does not have actual notice of the prior deed trumps that of a holder of a prior but unrecorded deed. Arkansas Code Annotated section 14-15-404(b) (Repl. 2013) provides:

> No deed, bond, or instrument of writing for the conveyance of any real estate, or by which the title thereto may be affected in law or equity, made or executed after December 21, 1846, shall be good or valid against a subsequent purchaser of the real estate for a *valuable consideration* without actual notice thereof or against any creditor of the person executing such an instrument obtaining a judgment or decree which by law may be a lien upon the real estate unless the deed, bond, or instrument, duly executed and acknowledged or proved as required by law, is filed for record in the office of the clerk and ex officio recorder of the county where the real estate is situated.

(Emphasis added.)

In the case before us, the parties stipulated that there was no bona fide purchaser for valuable consideration. Further, the testimony was unrefuted that Joy Ann paid no consideration when Jerry transferred title to himself and Joy Ann in the 1996 Deed and that the Cohicks did not pay consideration when the subsequent deeds quitclaiming title were executed.

The trial court clearly erred in finding that the 1996 Deed is the controlling deed. Arkansas Code Annotated section 14-15-404(b) does not provide support for the trial court's order because the 1996 Deed purported to convey title for no consideration rather than for valuable consideration as required by the statute. Joy Ann was not a subsequent purchaser for valuable consideration and does not get the benefit of the protections afforded under section 14-15-404(b). Further the trial court's ruling was not based on equitable defenses or equitable principles. In this case, because there was no bona fide purchaser for valuable consideration after Jerry's initial purchase, and the court's order was not based on equitable principles, neither the 1996 Deed nor the deeds that followed effectively passed title of the Property to the appellees. *Mehaffy*, 2022 Ark. App. 268, at 6, 646 S.W.3d at 654. Accordingly, we find that the 1992 Deed is the controlling deed.[5]

We reverse and remand for proceedings consistent with this ruling.

---

[5]Because the only issue on appeal was whether the 1996 Deed is controlling, appellees' arguments regarding equitable defenses to an action for ejectment are not before us. Further, the trial court's ruling is not based on equitable defenses or equitable principles.

Reversed and remanded.

WOOD and BROWN, JJ., agree.

*Stephen Lee Wood, P.A.*, by: *Stephen Lee Wood*, for appellant.

*Putman Law Office*, by: *William B. Putman*, for appellees.